PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-4208
_____

CORWIN CARL CATWELL,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS
(Agency No. A036 475 730)
Immigration Judge: Honorable Walter A. Durling

_____

Argued July 13, 2010

_____

Before: RENDELL, JORDAN, and GREENAWAY, JR.,
Circuit Judges

(Opinion Filed:  October 13, 2010)

Michael T. Gershberg, Esquire (argued)
Laura L. Sandoval, Esquire
 Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, DC 20036
        *Counsel for Petitioner Corwin Carl Catwell*

Kathryn L. DeAngelis, Esquire (argued)
Richard M. Evans, Esquire
Paul Fiorino, Esquire
Thomas W. Hussey, Esquire
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
*Counsel for Respondent Attorney General of the United States*

_____

OPINION

_____

GREENAWAY, JR., Circuit Judge

Petitioner, Corwin Carl Catwell ("Petitioner"), seeks review of the decision of the Board of Immigration Appeals ("BIA") that vacated the decision of the Immigration Judge ("IJ") granting cancellation of removal, and instead entered a

final order of removal against him. Petitioner raises four arguments in his petition,[1] only one of which requires extensive discussion.[2] The critical question for resolution is whether Petitioner's 2003 Pennsylvania state law conviction for

---

[1] The Government filed a motion to dismiss the petition, based on 8 U.S.C. § 1252(a)(2)(C), which provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered" by several sections of the statute. Although the Government appears to concede that this section does not apply, we explicitly conclude that this case falls within the exception provided by 8 U.S.C. § 1252(a)(2)(D), which allows judicial review of "constitutional claims and questions of law raised upon a petition for review filed with an appropriate court of appeals." Petitioner asks this Court to review questions of law, as well as the constitutionality of former 8 U.S.C. § 1432(a). Therefore, the motion to dismiss will be denied.

[2] Petitioner's other three arguments are (1) that the BIA applied the incorrect standard of review by failing to defer to the IJ's findings of fact; (2) that the BIA erred by shifting the burden of proof to Petitioner in the cancellation of removal proceeding; and (3) that Petitioner obtained derivative citizenship through his father. While Petitioner poses the third question in the issues presented section of his brief, his argument on this point focuses on the constitutional claim that "former § 321(a)(3) unconstitutionally discriminates against aliens based upon legitimacy and gender." (Br. of Pet'r 53.)

3

possession with intent to distribute 120.5 grams of marijuana constitutes an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(B), thereby rendering him ineligible for cancellation of removal, pursuant to 8 U.S.C. § 1229b(a)(3). The BIA concluded that Petitioner's conviction was an aggravated felony, since it did not fall within the exception established by 21 U.S.C. § 841(b)(4)[3] for a small amount of marijuana for no remuneration. This Court agrees with the BIA and will therefore deny the petition.

## I. BACKGROUND

Petitioner is a native and citizen of Guyana, born out of wedlock in the Republic of Guyana on March 3, 1968. (J.A. 235.) His parents were both citizens of Guyana at the time of his birth. In 1972, Petitioner's father, Carlisle Catwell, married

---

[3] Section 841(b)(4) provides that "[n]otwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of Title 18;" i.e., as if they committed a misdemeanor rather than a felony. Although the statute uses the spelling "marihuana," we will use the spelling adopted by the Supreme Court of the United States – "marijuana." Tony Mauro, To Are is Human, 12 Green Bag 2d 11, 12-13 (2008) (noting that Reporter of Decisions Henry Lind "asked the justices to vote on how to spell the cannabis-bearing plant" and subsequently "declared the issue resolved: '[T]he spelling from now on should be a 'j.' I hope that this will settle the matter.'").

Roberta Hines, a United States citizen, and entered the United States as a lawful permanent resident on January 26, 1974. (J.A. 185.) Petitioner's father became a naturalized United States citizen on July 19, 1978. (J.A. 238.)

On April 13, 1978, Petitioner, who had previously been living with his mother in Guyana, adopted his father's surname. (J.A. 236.) In 1980, Petitioner was admitted to the United States in New York City as a lawful permanent resident based on an approved Petition for Alien Relative filed by his stepmother, Roberta Hines. (J.A. 81, 177.) Upon Petitioner's arrival in the United States, his father obtained actual custody of Petitioner. Petitioner lived with his father until August 3, 1991, when his father was killed in a homicide. (J.A. 72, 237.) After his father's death, Petitioner lived with his birth mother, Alma Punch,[4] and his three brothers in Brooklyn, New York. Ms. Punch became a naturalized citizen on May 19, 1996, when Petitioner was 28 years old. (J.A. 177.) Although Petitioner lived with his birth mother immediately prior to his arrest, he also lived in Connecticut and Pennsylvania at various times in the past.[5]

In 1996, Petitioner pled guilty to possession of narcotics in the Connecticut Superior Court in New London, Connecticut. (J.A. 139, 188.) He received a six-year suspended sentence and three years' probation. (J.A. 188.) Petitioner was arrested in

---

[4] Ms. Punch's maiden name was Alma France. (J.A. 185.)

[5] Petitioner's testimony before the IJ was unclear as to the timing of his moves.

5

February 2003, for possession of a controlled substance in Philadelphia. After trial, he was found not guilty. (J.A. 141-42.) On June 24, 2003, Petitioner was arrested and charged with possession of "a controlled substance, to wit, marijuana (. . . 120.5 grams), in sufficient quantity and/or under sufficient circumstances as to indicate an intent to deliver." (J.A. 194.) On October 2, 2003, Petitioner pled guilty in the Philadelphia County Court of Common Pleas to possession of a controlled substance with intent to deliver or manufacture, in violation of 35 PA. STAT. ANN. § 780-113(a)(30)[6] and was sentenced to 15 months' probation. (J.A. 142, 193, 194.)

Based on this conviction, the Department of Homeland Security ("DHS") arrested Petitioner at his residence in Brooklyn, New York on September 20, 2006. (J.A. 186.) On February 12, 2007, DHS issued a Notice to Appear, charging him with removability, pursuant to 8 U.S.C. § 1227(a)(2)(B)(i)[7]

---

[6] The Pennsylvania statute provides that "[t]he following acts and the causing thereof within the Commonwealth are hereby prohibited: . . . (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 PA. STAT. ANN. § 780-113(a)(30).

[7] Section 1227(a)(2)(B)(i) provides that:

Any alien who at any time after admission has

6

and 8 U.S.C. § 1227(a)(2)(A)(iii).[8]

During an initial hearing on October 30, 2007, Petitioner informed the IJ that he was a United States citizen. (J.A. 69.) Based on that representation, the IJ suggested that Petitioner

> been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i).

[8] Section 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." "Aggravated felony" is defined in 8 U.S.C. § 1101(a)(43)(B) as, among other offenses, "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18). . . . The term applies to an offense described in this paragraph whether in violation of Federal or State law." Section 924(c)(2) defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. [§] 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. [§] 951 et seq.), or chapter 705 of title 46." The Controlled Substances Act ("CSA") prohibits a variety of offenses, such as possessing, manufacturing, distributing, and dispensing controlled substances.

submit an Application for Certification of Citizenship ("N-600 Application"). (J.A. 72-74.) Petitioner submitted the N-600 Application to the United States Citizenship and Immigration Services ("USCIS"), claiming derivative citizenship based upon his father's citizenship. (J.A. 242-56.) The USCIS denied Petitioner's N-600 Application on December 18, 2007, concluding that Petitioner did not have a valid claim to derivative citizenship from either parent. (J.A. 176.) The IJ affirmed the USCIS's decision. (J.A. 92-93.) The IJ then held that Petitioner was removable under 8 U.S.C. § 1227(a)(2)(B)(i), based on the 2003 Pennsylvania marijuana conviction, because he had been convicted of violating a law relating to a controlled substance.

Turning to the second basis for removal (8 U.S.C. § 1227(a)(2)(A)(iii)), whether Petitioner had been convicted of an aggravated felony, the issue before the IJ was whether Petitioner's 2003 Pennsylvania conviction would have constituted a felony under the CSA or whether it simply would have been a misdemeanor under § 841(b)(4). The Government acknowledged that Petitioner's offense involved no remuneration. (J.A. 96.) The IJ and the Government agreed that the only remaining issue was the weight of the marijuana involved.

At a subsequent hearing on March 18, 2008, the IJ questioned Petitioner as to whether the 120.5 grams of marijuana Petitioner possessed was for sale or for private use. (J.A. 101.) Petitioner testified that it was for his own personal use. (Id.) Petitioner also stated "I only had like three or four, four bags of it, that, that – I mean, I didn't have no ounces or no grams or whatever it is you're talking about." (Id.) The IJ then

ruled that:

> [U]nless I change my mind again, under questioning of you under oath later on - - I'm going to rule preliminarily this does not overtly suggest a commercial enterprise on your part. . . . But for the moment, I'll find that it's not a business or merchant nature sufficient to suggest it was something else other than personal use.

(J.A. 102.) Subsequently, the IJ suggested that Petitioner may be eligible for cancellation of removal, pursuant to 8 U.S.C. § 1229b(a),[9] and also suggested that Petitioner submit an application seeking that relief. (Id.)

On May 7, 2008 the IJ held a hearing on Petitioner's application for cancellation of removal. Petitioner testified as

---

[9] Section 1229b(a) provides that

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien--
> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
> (3) has not been convicted of any aggravated felony.

8 U.S.C. § 1229b(a).

9

to the circumstances leading up to his 2003 Philadelphia arrest. Petitioner stated that he was "sitting in front of the house that [he] was staying at" in Philadelphia, Pennsylvania when an undercover police officer passed by and asked him if he had any marijuana to sell. (J.A. 142-43.) Petitioner informed the officer that he did not have any marijuana to sell but his friends, who were inside the house, did have marijuana for purchase. (J.A. 143.) He then took $20 from the officer, exchanged it with his friends upstairs for two bags of marijuana, and exited the house to deliver the marijuana to the officer. (J.A. 143-44.) On June 24, 2003, Petitioner was arrested for possession of marijuana with intent to deliver. (J.A. 194.) Petitioner later pled guilty to those charges. (J.A. 193.)

Based on Petitioner's testimony, the IJ stated that the court "believes [Petitioner] has never sold drugs personally himself" and "the court believes [Petitioner] is eligible for the discretionary relief he seeks today." (J.A. 13.) The IJ ultimately granted Petitioner's application for cancellation of removal, pursuant to 8 U.S.C. § 1229b(a).

On May 29, 2008, DHS appealed the IJ's decision to the BIA. (J.A. 50-53.) DHS raised three arguments: (1) that Petitioner's October 2, 2003 conviction for possession of a controlled substance with intent to deliver constituted an aggravated felony, consequently barring him from seeking cancellation of removal, pursuant to 8 U.S.C. § 1229b(a)(3); (2) that the IJ erred in finding Petitioner eligible for cancellation of removal; and (3) that Petitioner had not met his burden of establishing that his second conviction was not an aggravated felony, under the "hypothetical federal felony approach," and that the IJ erred in finding that Petitioner was entitled to an

exception, based on the amount of drugs involved.

On September 19, 2008, the BIA reversed the IJ's decision cancelling Petitioner's removal. The BIA held that it was Petitioner's "burden of proof to show that he is eligible for relief, including establishing by a preponderance of the evidence that he was not convicted of an aggravated felony." (J.A. 9.) The BIA concluded that Petitioner had not met this burden. The BIA also concluded that Petitioner had not established that 120.5 grams of marijuana constituted a "small amount."

## II. JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction, pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. This Court has jurisdiction to review the final order of the BIA, pursuant to 8 U.S.C. § 1252(a).

When the BIA issues its own decision on the merits, rather than a summary affirmance, we review its decision, not that of the IJ. Sheriff v. Att'y Gen., 587 F.3d 584, 588 (3d Cir. 2009). "The BIA's factual findings are reviewed for substantial evidence." Briseno-Flores v. Att'y Gen., 492 F.3d 226, 228 (3d Cir. 2007) (citing 8 U.S.C. § 1252(b)(4)(B)). We review the BIA's legal determinations de novo, subject to the principles of deference articulated in Chevron v. Natural Resources Defense Council, 467 U.S. 837, 844 (1984). Briseno-Flores, 492 F.3d at 228.

Where the basis for removal is a conviction for an aggravated felony, "our jurisdiction is limited under the REAL ID Act 'to constitutional claims or questions of law.'" Pierre v. Att'y Gen., 528 F.3d 180, 184 (3d Cir. 2008) (en banc) (quoting

11

8 U.S.C. § 1252(a)(2)(C)-(D)). "Under the REAL ID Act, factual or discretionary determinations are outside our scope of review." Id.

## III. DISCUSSION

### A.

The Third Circuit has considered the Pennsylvania criminal statute at issue here in the immigration context several times before, most recently in Evanson v. Attorney General, 550 F.3d 284 (3d Cir. 2008). The reasoning from that case is straightforward.

First, "a state drug conviction constitutes an aggravated felony if (a) it would be punishable as a felony under the federal Controlled Substances Act, or (b) it is a felony under state law and includes an illicit trafficking element. Accordingly, we apply two independent tests for determining whether a state drug offense constitutes an aggravated felony: the 'illicit trafficking element' route and the 'hypothetical federal felony' route." Evanson, 550 F.3d at 288-89 (citing Garcia v. Att'y Gen., 462 F.3d 287, 291 (3d Cir. 2006)).[10]

_____

[10] "Under the illicit trafficking element test, a state felony drug conviction constitutes an aggravated felony if it contains a trafficking element." Evanson, 550 F.3d at 289. "Essential to the concept of 'trading or dealing' is activity of a business or merchant nature, thus excluding simple possession or transfer without consideration." Steele v. Blackman, 236 F.3d 130,135 (3d Cir. 2001). This test is not applicable here, since there is no argument regarding Petitioner receiving any monetary benefit.

12

The hypothetical federal felony[11] test requires a comparison of the state conviction to the analogous offense in the Controlled Substances Act ("CSA"). "A state marijuana conviction is therefore only equivalent to a federal drug felony if the offense involved payment or more than a small amount of marijuana." Id. at 289 (citing Steele v. Blackman, 236 F.3d 130, 137 (3d Cir. 2001)).[12]  Specifically, "[i]n Jeune v. Att'y Gen.,

_____

[11] Our reference to a "hypothetical federal felony" in this case differs from the "hypothetical approach" recently criticized by the Supreme Court in Carachuri-Rosendo v. Holder, 130 S. Ct. 2577 (2010).  As directed by the Supreme Court, we "look to the 'proscribe[d] conduct' of a state offense to determine whether it is 'punishable as a felony under federal law,'" considering "both the conviction (the relevant statutory hook), and the conduct actually punished by the state offense."  Id. at 2588 (quoting Lopez v. Gonzales, 549 U.S. 47, 60 (2006)). While our precedent uses the term "hypothetical federal felony," our analysis is not at all hypothetical.  Rather, it follows the Supreme Court's direction in Carachuri-Rosendo for determining whether a state offense constitutes a "fictional federal felony."  For consistency with our precedent, we will continue to use the phrase "hypothetical federal felony."

[12] Petitioner argues that we should apply the reasoning in Blackman to conclude that his offense is a misdemeanor. However, both the facts and the procedural setting in Blackman differ from the present case.

In Blackman, the alien had been convicted in New York

13

we considered whether a conviction under 35 PA. STAT. ANN. § 780-113(a)(30) was analogous to a violation of 21 U.S.C.

---

state courts of three misdemeanor offenses for possession of unspecified amounts of marijuana. As this Court observed, "the elements of the misdemeanor offense of 'Criminal Sale of Marijuana' are met if the defendant has distributed 30 grams or less of marijuana without remuneration." Blackman, 236 F.3d at 137. Taken individually, these offenses were not inherently federal felonies since "the distribution of 30 grams or less of marijuana without remuneration is not inherently a felony under federal law." Id.

The question presented there did not focus on the quantity of marijuana involved, but rather the number of offenses the alien had committed. The Court of Appeals concluded that the district judge had erred in deciding that the alien's multiple offenses constituted the equivalent of a federal felony. The Court of Appeals reasoned that, if a federal prosecutor "wants a felony conviction, he or she must file an information under 21 U.S.C. § 851 alleging, and subsequently prove, that the defendant has been previously convicted of a drug offense at the time of the offense being prosecuted." Id. However, the state prosecutors neither sought nor obtained an enhancement based on the prior convictions. Since this aspect of the federal felony was never litigated in state court, the Court of Appeals concluded that the alien could not be held accountable for a federal felony since every element necessary to prove a federal felony had not been charged or proven. Id. at 137-38.

14

§ 841(b)(1)(D).[13] We found that distributing a small amount of marijuana for no remuneration could be prosecuted under the Pennsylvania statute, and thus that we could not determine that it was equivalent to a federal drug felony without more information about the conviction." Id. (citing Jeune v. Att'y Gen., 476 F.3d 199, 204-05 (3d Cir. 2007)).

Since "a conviction under the Pennsylvania statute is not necessarily an aggravated felony . . . we must determine what records may be consulted to evaluate a conviction under the Pennsylvania statute." Evanson, 550 F.3d at 290. This determination requires application of the "formal categorical approach" or the "modified categorical approach." The presumption is that the formal categorical approach applies. "A formal categorical approach prohibits us from any review of the factual basis for an underlying conviction." Id.

The modified categorical approach, which allows consideration of specific records, is used when the state statute is divisible. The Third Circuit has concluded that "35 PA. STAT. ANN. § 780-113(a)(30) [the statute in question here] is divisible

---

[13] Section 841(a) provides "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a). Section 841(b)(1)(D) provides the penalty for a violation of section (a) where the offense involves less than 50 kilograms of marijuana, 50 or more marijuana plants, 10 kilograms of hashish, or one kilogram of hashish oil. 21 U.S.C. § 841(b)(1)(D).

15

because it describes 'three distinct offenses: manufacture, delivery, and possession with intent to deliver or manufacture.'" Id. at 292 (quoting Garcia, 462 F.3d at 293 n.9). Accordingly, this Court will apply the modified categorical approach and consider the record of Petitioner's state conviction to determine the factual basis of the conviction. The record from the Pennsylvania state court is sparse, containing only the criminal complaint[14] and what appears to be a sentencing document.[15]

---

[14] In Garcia, we observed that

> In Pennsylvania, a criminal complaint is not merely a police report. It is the charging instrument, and in this case bears the imprimatur of the district attorney. The filing of a criminal complaint is sufficient to initiate criminal proceedings in the Commonwealth and Pennsylvania law does not require the subsequent filing of either an information or an indictment if a plea of guilty or nolo contendere is entered. Since the record of conviction includes the charging instrument, and the criminal complaint in [Petitioner's] case is the relevant charging instrument, we may appropriately examine that complaint if departure from the formal categorical approach is appropriate.

Garcia, 462 F.3d at 292 (internal citations omitted). This Court further elucidated this principle in Evanson when it stated that "the only parts of the current record appropriately before the

16

The criminal complaint provides "more information about the conviction" that was lacking in <u>Evanson</u>. Based upon the criminal complaint, it is clear that Petitioner "possessed a controlled substance, to wit, marijuana (PNW: 120.5 grams), in sufficient quantity and/or under sufficient circumstances as to indicate an intent to deliver." (J.A. 194.)

On its face, Petitioner's offense appears to be an aggravated felony, since it involves possession of a controlled substance with intent to deliver.[16] Petitioner now argues, as he

BIA were the statutory definition and those counts of the criminal information to which [the petitioner] pled guilty." <u>Evanson</u>, 550 F.3d at 293.

[15] We may not consider any representations made in the sentencing document since "factual assertions contained only in a judgment of sentence may not be considered under the modified categorical approach." <u>Evanson</u>, 550 F.3d at 293.

[16] We note that, contrary to the IJ's conclusion that Petitioner possessed the marijuana for his personal use, the offense with which Petitioner was charged, and to which he pled guilty, was not simple possession. Rather, it was possession with intent to deliver. According to the definition in the statute, "'[d]eliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 PA. STAT. ANN. § 780-102(b). By its very definition, Petitioner's offense precluded the concept of personal use.

17

had before the IJ and BIA, that, based on the amount of marijuana he possessed, he falls within the exception of section 841(b)(4).

Thus, this Court must decide whether 120.5 grams of marijuana is, or is not, a small amount of marijuana for purposes of section 841(b)(4).[17] As in all efforts at statutory construction, we turn first to the language of the statute. Hardt v. Reliance Standard Life Ins. Co., 130 S.Ct. 2149, 2156 (2010) (Statutory construction "begin[s] by analyzing the statutory language, assum[ing] that the ordinary meaning of that language

---

[17] Very few cases have addressed the question of "small amount" for purposes of the exception set forth in 21 U.S.C. § 841(b)(4). All of the cases we have found specifically discussing small quantities of marijuana involved drug possession in prison. The cases all distinguish between drug possession in or near a prison and drug possession on the street, noting that possessing drugs in prison has more severe consequences than possessing drugs on the street. The amounts involved ranged from 1.256 grams to 17.2 grams. None of these were determined to be a small amount for the purposes of section 841(b)(4). See United States v. Carmichael, 155 F.3d 561 (4th Cir. 1998) (unpublished table decision) (1.256 grams of marijuana brought into prison is not a small amount since drugs in prison are measured in grams and milligrams not pounds and ounces); United States v. Wheeler, 121 F.3d 702 (4th Cir. 1997) (unpublished table decision) (2.86 grams not a small amount); U.S. v. Damerville, 27 F.3d 254 (7th Cir. 1994) (17.2 grams of marijuana distributed to inmates is not a small amount).

18

accurately expresses the legislative purpose." (internal quotations omitted)); Blum v. Stenson, 465 U.S. 886, 896 (1984) ("Where . . . the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear."). "Where a statute's text is ambiguous, relevant legislative history, along with consideration of the statutory objectives, can be useful in illuminating its meaning." United States. v. E.I. Dupont De Nemours and Co. Inc., 432 F.3d 161, 169 (3d Cir. 2005).

Here, the statute itself provides no guidance on how "small amount" should be interpreted. We therefore turn to the legislative history.

The legislative history of §841(b)(4) provides some guidance on the definition of "small amount of marijuana" since it, at least, mentions a specific amount at one point. In 1970, when the Senate was considering amending the CSA to include the small amount exception, Senator Ted Kennedy, a co-sponsor of the amendment, observed that "[m]any youngsters may be in a situation where they are with friends, where they give a marihuana cigarette or a small quantity of marihuana to one or two others – not professional pushers, not to make a profit, but in a casual and informal way." 116 CONG. REC. 35,555 (1970).

Several courts have noted, looking to the legislative history of the statute, that the exception contemplated social sharing situations. United States v. Eddy, 523 F.3d 1268, 1271 (10th Cir. 2008) (section 841(b)(4) refers to "social sharing of marijuana among friends"); United States v. Outen, 286 F.3d 622, 637 (2d Cir. 2002) (unspecified amount of marijuana, but

19

court noted the exception applied to "the sharing of small amounts of marijuana in social situations"). These observations are supported by statements made by Senator Harold Hughes from Iowa, who observed that "[t]rafficking provisions should apply to the large distributor, rather than to the person who is only using the drug with his friends." 116 CONG. REC. 35,555 (1970).

The comments made during consideration of the amendment lead us to conclude that Congress contemplated and intended "small amount" to mean the amount of marijuana an individual would be likely to use on a single occasion, in a social setting. In light of Senator Kennedy's remarks, that amount would be no more than one or two marijuana cigarettes, or a few grams of marijuana. This conclusion is consistent with 8 U.S.C. § 1227(a)(2)(B)(i), which provides an exception to the controlled substances offense as a basis for removal. The exception exempts someone who possesses 30 grams or less of marijuana from removal, describing this as an exception for personal use. 8 U.S.C. § 1227(a)(2)(B)(i).

Under the Sentencing Guidelines, one marijuana cigarette is equivalent to .5 grams. U.S.S.G. § 2D1.1. Given that criterion, Petitioner possessed the equivalent of 241 marijuana cigarettes, well beyond the single cigarette envisioned by Senator Kennedy and the Congress.

We conclude that 120.5 grams is not a small amount, as contemplated by Congress when it enacted the exception. Therefore, Petitioner's conviction did not involve a small

amount of marijuana for no remuneration.[18]  The exception created by § 841(b)(4) does not apply to him.  As a result, Petitioner's conviction was for an aggravated felony, rendering him ineligible for cancellation of removal.[19]

**B.**

Petitioner's remaining claims are without merit.

Petitioner argues that the BIA applied the incorrect standard of review[20] when considering the appeal from the IJ's

---

[18]  Our conclusion only addresses the quantity of marijuana involved in Petitioner's offense.  Since the BIA did not discuss, and the Government does not challenge, the IJ's finding that Petitioner's offense involved no remuneration, we have no reason to disturb that finding.

[19] Because our analysis, using the modified categorical approach, leads us to conclude that Petitioner was convicted of an aggravated felony, his argument that, in addressing whether he was so convicted and whether he was eligible for cancellation of removal, the BIA erred in placing the burden of proof on him is superfluous. Our determination that his conviction constitutes an aggravated felony does not rest upon any application of a burden of proof, but rather on a construction of the CSA and a straightforward application of the modified categorical approach.

[20]  The BIA's standard of review is set forth in 8 C.F.R. § 1003.1(d)(3), which provides, in pertinent part, that:

decision. That is, Petitioner argues that the BIA "ignor[ed] the primary factual findings made by the IJ. Specifically, Catwell's credibility, and the circumstances surrounding his conviction, are factual issues that warrant deference from the BIA." (Br. of Pet'r 46.) Upon closer analysis, the only fact that the BIA considered in reaching its conclusion that Petitioner did not possess a small amount of marijuana was a fact noted by the IJ, and acknowledged by Petitioner – that Petitioner possessed 120.5 grams of marijuana. (J.A. 194.) In fact, based on our precedent, this is one of the few facts the BIA could properly consider. Evanson, 550 F.3d at 293. Under the modified categorical approach, the BIA could not consider Petitioner's testimony in analyzing whether Petitioner's conviction was the equivalent of a federal felony. Id. ("The BIA erred in considering the amount of marijuana involved in [the petitioner's] offense, information contained only in the judgment of sentence and his testimony before the IJ."). Thus, the BIA did not ignore the IJ's factual findings, as any factual

---

(i) The Board will not engage in de novo review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.

(ii) The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo.

22

findings made by the IJ are irrelevant to the aggravated felony analysis.

Finally, Petitioner contends that former 8 U.S.C. § 1432(a)(3) "unconstitutionally discriminates against [him] based upon legitimacy and gender." (Br. of Pet'r 53.) Under former 8 U.S.C. § 1432(a)(3) (repealed 2000), a child born out of wedlock outside of the United States, where the paternity of the child has not been established, can receive derivative citizenship only through the naturalization of the mother.[21] USCIS denied Petitioner's N-600 Application on December 18, 2007, on the basis that Petitioner did not meet the statutory

---

[21] While Petitioner challenges subsection (3), former 8 U.S.C. § 1432(a) provides that "a child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions: (1) The naturalization of both parents; or (2) The naturalization of the surviving parent if one of the parents is deceased; or (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if (4) Such naturalization takes place while such child is under the age of eighteen years; and (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years."

23

requirements of former 8 U.S.C. § 1432(a)(3). Petitioner's birth mother became a naturalized citizen after he turned eighteen. While his father was naturalized before Petitioner's eighteenth birthday, his parents were never married, and therefore could not be legally separated. As a result, Petitioner could not obtain derivative citizenship from either parent. That decision was affirmed by the IJ (J.A. 92-93), and Petitioner does not contend that the conclusion was in error. Instead, he argues that the statute violates the equal protection clause because it "discriminates against aliens based upon legitimacy and gender." (Br. of Pet'r 53.)

The Supreme Court has upheld differential treatment of parents based on sex in the naturalization context finding "nothing irrational or improper in the recognition that at the moment of birth . . . parenthood [for the mother] has been established in a way not guaranteed in the case of the unwed father." Nguyen v. INS, 533 U.S. 53, 68 (2001). In Nguyen v. INS, the Court upheld a statute imposing an additional "set of requirements on the children of citizen fathers born abroad and out of wedlock to a noncitizen mother that are not imposed under like circumstances when the citizen parent is the mother." 533 U.S. at 60. The Court found that "[g]iven the proof of motherhood that is inherent in the birth itself, it is unremarkable that Congress did not require the same affirmative steps as mothers." Id. at 64.

The differential treatment embodied in 8 U.S.C. § 1432(a)(3) similarly withstands equal protection scrutiny because it serves the important governmental objective of allowing single parent derivative citizenship while protecting the rights of alien parents by limiting circumstances in which it

24

(derivative citizenship) can occur. See Barthelemy v. Ashcroft, 329 F.3d 1062, 1066 (9th Cir. 2003) (finding that Congress's intent in limiting derivative naturalization was in furtherance of a policy of protecting parental rights); see also Bustamonte-Barrerra v. Gonzales, 447 F.3d 388, 397 (5th Cir. 2006) (finding that section 1432 was adopted in part "to prevent the child from being separated from an alien parent who has a legal right to custody").

Although the statute creates an additional barrier to establishing derivative citizenship by way of unwed fathers, "[t]he imposition of a different set of rules for making that legal determination with respect to fathers and mothers is neither surprising nor troublesome from a constitutional perspective." Nguyen, 533 U.S. at 63. Furthermore, the statutory scheme "is substantially related to the achievement of the governmental objective in question." Id. at 70 (citations omitted) (internal quotation marks omitted). While establishing a general rule for derivative citizenship based on naturalization of both parents, Congress created an easily administered scheme providing limited exceptions for alien children to achieve citizenship based on the naturalization of one parent. Petitioner argues that this unduly prevents him from obtaining citizenship; however, the statute need not "be capable of achieving the [government's] objective in every instance." Id. The legitimate reasons for distinguishing between unwed mothers and unwed fathers likewise support the distinction between children born to unwed parents and children born to married parents who have since separated. See Barthelemy, 329 F.3d at 1066 (rejecting argument that former § 1432 "impermissibly distinguishes between those children born of parents who never married and

25

those born of parents who at one time were married and then legally separated"); cf. Fiallo v. Bell, 430 U.S. 787, 797-99 (1977) (upholding INA's definition of "child," for purposes of the child receiving preferential immigration treatment, to encompass the relationship between an illegitimate child and his or her mother but not the relationship between an illegitimate child and his or her father).

Former 8 U.S.C. § 1432's restrictions on derivative citizenship based solely on the father's naturalization are rationally related to the government's objective of protecting the rights of non-naturalized parents. As a result, Petitioner's constitutional challenge fails.

## IV. CONCLUSION

For the reasons set forth above, we conclude that Petitioner possessed more than a small amount of marijuana. As a result, the BIA correctly concluded that Petitioner was not eligible for cancellation of removal. We also conclude that the BIA correctly deferred to the IJ's findings of fact. Finally, we find Petitioner's constitutional challenge to former 8 U.S.C. § 1432 to be without merit. We will therefore deny the petition for review.