NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2896
_____

ALIBII DZHUMANOV,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                    Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A-089-198-152)
Immigration Judge: Honorable. Mariam K. Mills
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 21, 2015

Before:   FISHER, JORDAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed: January 22, 2015)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Alibii Dzhumanov petitions for review of an order of the Board of Immigration Appeals ("BIA") denying his request for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We will deny the petition.

## I.    Background

Dzhumanov, a native and citizen of Kyrgyzstan, was admitted to the United States on an F-I nonimmigrant student visa in 2006. When he overstayed his visa, the Department of Homeland Security charged him with removal. Through counsel, Dzhumanov conceded that he was subject to removal but requested asylum, withholding of removal, and CAT relief. In the alternative, he also requested voluntary departure. Dzhumanov alleged that he would be subject to persecution and torture based on his membership in a Kyrgyzstan political party known as Ata-Meken, and based on his affiliation with a particular social group, namely, family members of his cousin Ravshan Djeyenbekov, a prominent Ata-Meken party leader and member of parliament in Kyrgyzstan who has faced retaliation for his political positions.

The Immigration Judge ("IJ") granted Dzhumanov's request for voluntary departure but otherwise denied relief. In doing so, the IJ determined that Dzhumanov's subjective fear of persecution was credible but that there was no objective basis for it. Dzhumanov appealed to the BIA, which concluded that the IJ's finding that Dzhumanov did not have a well-founded fear of future persecution should be sustained. The IJ's ruling was based largely on three subsidiary findings: (1) Dzhumanov could safely relocate to his family's hometown in Kyrgyzstan due to the prominence of his father, a respected businessman; (2) political changes in the country have reduced any threat to

2

members of Ata-Meken; and (3) Dzhumanov's relationship with his cousin did not pose a danger nor did he face the same type of threats as his cousin because he was not similarly situated. Having accepted those factual premises, the BIA concluded that Dzhumanov could not establish his eligibility for asylum, withholding of removal, or CAT relief, and it dismissed the appeal. Dzhumanov filed a timely petition for review.

## II.    Discussion[1]

As a preliminary matter, the government asserts that we lack jurisdiction to review Dzhumanov's challenge to the asylum and withholding of removal rulings. It argues that the IJ denied relief on two independent grounds: Dzhumanov did not establish an objectively reasonable fear of future persecution, and Dzhumanov could avoid persecution by relocating to another part of Kyrgyzstan. *See* 8 C.F.R. § 1208.13(b)(2)(ii) ("An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality … if under all the circumstances it would be reasonable to expect the applicant to do so."); *id*. at § 1208.16(b)(2) (applying a similar test for withholding of removal). As the government sees it, because Dzhumanov did not challenge the IJ's relocation finding before the BIA, he failed to exhaust his administrative remedies and we lack jurisdiction

---

[1] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3); we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). "We review the BIA's legal determinations de novo, subject to the principles of deference articulated in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)." *Catwell v. Att'y Gen.*, 623 F.3d 199, 205 (3d Cir. 2010). We review factual findings under the substantial-evidence standard. *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006). Under that standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

3

to review the asylum and withholding of removal determinations. *See Castro v. Att'y Gen.*, 671 F.3d 356, 365 (3d Cir. 2012) ("The exhaustion requirement attaches to each particular issue raised by the petitioner. A petitioner's failure to exhaust an issue by presenting it to the BIA deprives us of jurisdiction to consider that issue." (citation omitted)).

While it is true that Dzhumanov did not mention the specific relocation finding in his notice of appeal or brief before the BIA, he properly exhausted his administrative remedies by asserting to the BIA that the IJ's decision was not supported by sufficient evidence. *See Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005) (concluding that a notice of appeal to the BIA that asserts generally that the IJ's decision was "not supported by substantial evidence within the record" was sufficient to exhaust the remedies for a specific factual challenge advanced before the court of appeals). We thus have jurisdiction to consider his petition for review.

Regardless of any flaws there may be in the IJ's finding with respect to Dzhumanov's option of relocating, the remaining conclusions of fact are supported by substantial evidence, and they sufficiently establish that Dzhumanov is not eligible for asylum or withholding of removal. A significant portion of the evidence in the administrative record describes events prior to Kyrgyzstan's most recent revolution in 2010. Dzhumanov argues that security forces in the country are tied to the previous regime and will continue a pattern of persecuting those, like Ata-Meken members, who opposed the regime. But in contrast to the string of reports of threatening, harassing, and imprisoning opposition party members and leaders before the 2010 revolution, the

4

administrative record is sparse on specific examples of post-revolution persecution of political opponents. *Compare* A.R. at 323 (news report from 2011 indicating that a member of parliament from another opposition party asked the legislative assembly to supply security guards for herself and her family because she feared retaliation for her position on ethnic violence against Uzbeks in southern Kyrgyzstan), *and id.* at 398-99 (arbitrary charges brought against several former government officials in late 2010), *with, e.g.*, *id*. at 536 (false charges filed against Ata-Meken party chairman in 2009), *id.* at 591 (another opposition party leader killed in prison in 2009), *id.* at 601, 603 (threats to Ata-Meken members in 2008 and 2009), *id.* at 610 (son and prominent brother of opposition leader arrested in 2009), *id.* at 631 (leader of political dissident group arrested and convicted in 2008), *id.* at 624, 722 (Dzhumanov's uncle, who published a prominent newspaper advocating Ata-Meken's views, arrested on libel charges in 2008), *and id.* at 557 (false charges thrice filed against Dzhumanov's cousin, the Ata-Meken party vice chairman, in 2007 and 2008).

The bulk of the evidence addressing post-revolution events focuses on violence against ethnic Uzbeks. Dzhumanov argues that, because Ata-Meken is viewed as sympathetic to the Uzbek cause, the threat of persecution against members of his political party persists after the revolution. But, to the extent his cause-and-effect assertion is correct, the party's difficulties on account of that unpopular view appear to be political, with Ata-Meken performing poorly in the polls and being shut out of governing coalitions. The administrative record contains no examples of persecution of Ata-Meken members or leaders on the basis of party support of Uzbeks. We cannot say on this

5

record that "any reasonable adjudicator would be compelled to conclude," 8 U.S.C. § 1252(b)(4)(B), that Dzhumanov had "a well-founded fear of future persecution," 8 C.F.R. § 1208.13(b), let alone that it was "more likely than not" that he would be persecuted, *id.* § 1208.16(b)(2). Therefore, Dzhumanov's request for asylum and withholding of removal was properly denied.[2]

Dzhumanov also challenges the denial of his claim for CAT relief. While the administrative record contains reports of the continued use of torture against prisoners after the 2010 revolution, Dzhumanov has failed to establish, for the reasons stated above, that he would likely be imprisoned if he returned to Kyrgyzstan. Thus, he has failed to establish that it is "more likely than not" that he would be tortured upon removal. *Id.* at § 1208.16(c)(2).[3]

## III. Conclusion

For the foregoing reasons, we will deny the petition for review.

---

[2] Dzhumanov argues that the BIA failed to grasp the essence of his argument: that he faced a greater risk of persecution because he was associated with a prominent party figure but not prominent enough himself to receive bodyguards. But the BIA rejected the premise of Dzhumanov's argument, concluding that the current situation in Kyrgyzstan did not present a sufficient risk of persecution based on political opinion.

[3] We do not address Dzhumanov's one-sentence argument that the BIA should have remanded his case to the IJ. *See Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 821 n.10 (3d Cir. 2006) ("[P]assing and conclusory statements do not preserve an issue for appeal.").