NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2201
_____

AYOUBA KOMARA,
AKA Issouf Traore,
AKA Bamba Amara,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                    Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A208-937-266)
Immigration Judge: Hon. Daniel A. Morris
_____

ARGUED
March 13, 2018

Before:  JORDAN, SHWARTZ, and KRAUSE, *Circuit Judges*

(Filed: July 12, 2018)
_____

Ingrid D. Johnson, Esq.   [ARGUED]
Drinker Biddle & Reath
105 College Road East
Suite 300
P.O. Box 627
Princeton, NJ  08542
        *Counsel for Petitioner*

Sarah A. Byrd, Esq.
Thankful T. Vanderstar, Esq.
Kerry A. Monaco, Esq.   [ARGUED]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC  20044
　　　*Counsel for Respondent*

_____

OPINION[*]

_____

JORDAN, *Circuit Judge*.

Ayouba Komara petitions for review of an order of the Board of Immigration Appeals ("BIA") denying his request for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1]  We will deny the petition.

## I.　　Factual Background[2]

Komara is a native and citizen of the Ivory Coast.  From 2005 to 2015, he resided in the capital city of Abidjan with his wife and five children, whom he supported through his work as a merchant.  He left Abidjan because he fears a gang called the Microbes, which consists of children ages eight and older who travel in groups of twenty or thirty, assaulting and killing people with firearms and machetes.  Komara says that the gang

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] We thank pro bono counsel for very able representation of Komara in this matter.

[2] The background information provided here is drawn from the administrative record.

members are indiscriminate about who they attack, and they operate everywhere in the Ivory Coast.

According to Komara, the Microbes are funded, controlled, and encouraged by the Popular Ivorian Front ("FPI"), which is the political party that held power in the Ivory Coast during the first decade of the 2000s. Komara supports, and was formerly a member of, a rival political party, the Rally of the Republicans ("RDR"). He was in charge of mobilizing members of the RDR when there was "a meeting or a concert" of that party. (Admin. Rec. ("A.R.") at 119-20.) The FPI and the RDR competed in a decade-long power struggle, and, in 2010, the RDR ultimately gained governmental control, which it retains today.

Komara first denounced the Microbes to the police in 2015 after they attacked and killed a friend of his, who was active in the RDR in Komara's neighborhood. After Komara reported the attack, police officers raided the Microbes in that neighborhood, which led to a shootout between the police and the Microbes that left one of the gang leaders dead. Komara said that, in retaliation for reporting the Microbes to the police, a group of Microbes showed up at his home. Komara was not there at the time, but his brother was. The Microbes attacked his brother with machetes, and, although he ultimately escaped, he suffered serious injuries that required treatment at a hospital. Komara again reported the Microbes to the police. He says that the police told him that he was being targeted by the gang. That was when he moved his family to another part of the Ivory Coast. He then went on his own to take refuge in nearby Burkina Faso for

3

one year. He returned to the Ivory Coast for less than a day before heading to the United States in May 2016, with a false passport.

When he arrived, Komara applied for admission but did not possess any valid admission documents. In interviews with immigration officials, he said he fears returning to the Ivory Coast because the Microbes will continue to seek revenge for reporting them to the police. He believes that his work as a merchant makes him more visible than others and so he is more vulnerable to attack.

## II. Procedural History

Removal proceedings were initiated against Komara, and he concedes that he is removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1182(a)(7)(A)(i)(I). He applied for asylum and statutory withholding of removal based on persecution on account of both his membership in particular social groups and his political opinion. His proposed social groups are individuals who denounce criminal acts performed by gangs and individuals who report crimes to the police.[3] He also applied for relief under the CAT.

The immigration judge ("IJ") assigned to the case issued an oral decision denying Komara all relief. The IJ found that Komara's testimony was generally credible. Nevertheless, with respect to the request for asylum, the IJ concluded that Komara had not established past persecution nor a well-founded fear of future persecution. The IJ

---

[3] Komara had also proposed before the agency a particular social group consisting of victims of gang violence. He has not pursued that line of argument before us, and it is thus forfeited. *See In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016) (treating as forfeited arguments not raised in an appellant's opening brief).

4

also determined that, even if Komara had made the requisite showing as to persecution, he had not shown that he would have been targeted on a protected ground. Specifically, he did not show that his political opinion was or would be the main reason that the Microbes would target him. Moreover, he did not advance any legally cognizable particular social group, because his proposed groups were neither sufficiently particular nor socially distinct.

Having concluded that Komara failed to satisfy the requirements for asylum, the IJ also concluded that Komara could not meet the higher burden of proving entitlement to withholding of removal. Finally, the IJ denied Komara's request for relief under the CAT because Komara had not shown a likelihood of future torture that was specific to him; his testimony only made general allegations of violence.

The BIA affirmed the IJ's decision. It agreed that, under the current legal framework for defining a particular social group, Komara's proposed groups failed to meet the requirements of particularity and social distinction. Furthermore, the BIA agreed that Komara had not shown that his actual or imputed political opinion was why the Microbes targeted him. Finally, the BIA found no clear error in the IJ's factual finding that Komara had not shown it to be more likely than not that he would suffer abuse amounting to torture.

Komara timely filed the present petition for review.

## III.    Discussion[4]

Komara does not challenge the BIA's decision that he is ineligible for asylum or withholding of removal based on persecution on account of his actual or imputed political opinion, nor does he challenge the BIA's denial of his application for relief under the CAT.  Therefore, those claims are forfeited.  *See In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016) (treating as forfeited arguments not raised in an appellant's opening brief).  He does, however, argue that we must vacate the BIA's decision to deny his asylum and withholding of removal claims based on his membership in two proposed particular social groups.  The record does not support that conclusion and, to the contrary, dictates that we deny his petition for review.

According to Komara, he is entitled to asylum because substantial evidence demonstrates that he suffered past persecution and that he has a well-founded fear of future persecution.  To be eligible for asylum, an alien must be a "refugee," 8 U.S.C. § 1158(b)(1)(A), which is defined as a person who has suffered past persecution or has a well-founded fear of future persecution due to his "race, religion, nationality,

---

[4] The BIA had jurisdiction under 8 U.S.C. § 1103 and 8 C.F.R. § 1003.1(b)(3). We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).  "We review the BIA's legal determinations de novo, subject to the principles of deference articulated in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984)."  *Catwell v. Att'y Gen.*, 623 F.3d 199, 205 (3d Cir. 2010).  We review factual findings under the substantial-evidence standard.  *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006).  Under that standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]"  8 U.S.C. § 1252(b)(4)(B).  "Because the BIA did not summarily affirm the IJ's order but instead issued a separate opinion, we review the BIA's disposition and look to the IJ's ruling only insofar as the BIA deferred to it."  *Roye v. Att'y Gen.*, 693 F.3d 333, 339 (3d Cir. 2012).

6

membership in a particular social group, or political opinion[,]" *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 590 (3d Cir. 2011) (quoting 8 U.S.C. § 1101(a)(42)(A)).  An alien relying on membership in a "particular social group" as the basis for claiming refugee status must demonstrate that his group satisfies certain criteria to be cognizable under the INA.  *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 219 (3d Cir. 2017).

The IJ and the BIA both concluded that the particular social groups Komara has proposed fail to do so.  The BIA applied the test set forth in *Matter of M-E-V-G-*, pursuant to which an applicant has to satisfy three requirements to establish a cognizable particular social group: first, that the group is "composed of members who share a common immutable characteristic[;]" second, that the group is "defined with particularity," which means it has discrete and definable boundaries that are not too "amorphous, overbroad, diffuse, or subjective[;]" and third, that the group is "socially distinct within the society in question," which means "the people of a given society would perceive [the] proposed group as sufficiently separate or distinct[.]"  *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237, 239, 241 (B.I.A. 2014).  In *S.E.R.L. v. Attorney General United States of America*, we concluded that the BIA's interpretation of "particular social group," including the particularity and social distinction requirements, is reasonable and entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  ___ F.3d ___, No. 17-2031, 2018 WL 3233796, at *10-13 (3d Cir. July 3, 2018).  Therefore, we apply the three-part test from *M-E-V-G-* to Komara's proposed social groups.  *Id.*

7

Those groups fail the test because they are not socially distinct. "Evidence such as country conditions reports, expert witness testimony, and press accounts of discriminatory laws and policies, historical animosities, and the like may establish that a group exists and is perceived as 'distinct' … in a particular society." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 244. Komara, however, points to no evidence in the record supporting the assertion that "individuals who denounce criminal acts performed by gang members" and "individuals who report crimes to the police" are perceived as distinct groups by citizens of the Ivory Coast. (Opening Br. at 18.)

The 2015 Department of State country report for the Ivory Coast does not identify any mistreatment of individuals who oppose criminal activity or who report crimes to the police. No expert testimony was proffered. And the only press accounts in the record suggest that the Ivory Coast's population as a whole is frustrated with the criminal and gang violence taking place in the country, which indicates that Ivory Coast society would not recognize Komara's proposed groups as socially distinct from others. Moreover, there is no evidence of historical animosity in the Ivory Coast against people who oppose gangs or who report crimes to the police.

Nor is there anything distinct, it seems, about those who oppose the Microbes specifically. The Microbes themselves do not appear to pay attention to that. Komara stated that they are indiscriminate in their hostility – "They assault everybody." (A.R. at 141.) Even if Komara could argue that the Microbes perceive as distinct the people who denounce their activities and report them to the police, a persecutor's subjective perception is legally insufficient to demonstrate social distinction. *See Matter of M-E-V-*

8

*G-*, 26 I. & N. Dec. at 242 (clarifying that recognition of a particular social group "is determined by the perception of the society in question, rather than by the perception of the persecutor").

Because Komara's proposed social groups lack social distinction, it is unnecessary to determine whether those groups are sufficiently particular. In sum, we agree with the BIA's conclusion that Komara has not demonstrated that his proposed particular social groups are legally cognizable under the INA, and his asylum application was properly denied.[5]

Turning to Komara's withholding of removal claim, because he cannot meet the standard for asylum, it necessarily follows that he cannot meet the more stringent standard for withholding of removal. *See* 8 U.S.C. § 1231(b)(3)(A) ("[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's … membership in a particular social group[.]"); *Valdiviezo-Galdamez*, 663 F.3d at 591 ("To qualify for withholding of removal [under 8 U.S.C. § 1231(b)(3)], an alien must establish a 'clear probability of persecution,' i.e., that it is more likely than not, that s/he would suffer persecution upon returning home." (citation omitted)).

## IV. Conclusion

For the foregoing reasons, we will deny Komara's petition for review.

---

[5] Because Komara has not demonstrated persecution based on a protected ground, his remaining arguments are moot.