**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1847
_____

IWAN SOETIONO; FENNY RATNAWATI LIGITO,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A095-838-336 and A095-838-337)
Immigration Judge: Honorable Rosalind K. Malloy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 8, 2011
Before: SLOVITER, CHAGARES and WEIS, <u>Circuit</u> <u>Judges</u>
(Opinion filed: June 14, 2011)
_____

OPINION
_____

PER CURIAM.

Petitioners Iwan Soetiono and Fenny Ratnawati Ligito seek review of the

Board of Immigration Appeals' ("BIA") final order of removal. For the following

reasons, we will deny the petition for review.[1]

## I.

Petitioners are husband and wife, and natives and citizens of Indonesia who entered the United States in August 2001, and stayed beyond the permissible period. Petitioners were thereafter issued a Notice to Appear and conceded removability. Soetiono (as the lead respondent) filed an application for asylum, withholding of removal, protection under the Convention Against Torture ("CAT") and, alternatively, voluntary departure, claiming that they had suffered persecution in the past on the basis of their ethnicity (Soetiono is one-half Chinese and one-half Javanese, and Ligito is Chinese), their religion (Catholic), and their membership in a "wealthy social class."

Soetiono testified regarding the alleged acts of persecution that he had suffered when he lived in Surabaya.[2] Ligito, as a derivative applicant, did not testify. At

---

[1]  Having determined that oral argument is not necessary, we will deny petitioners' request.

[2]  As accurately summarized by the Immigration Judge ("IJ"), Soetiono testified that he suffered harm in the following ways:  1) he was forced to join a "konvoi" (a large political demonstration) and was later beaten up by a group of Javanese when he left; 2) he was insulted and threatened by a taxi driver; 3) he was threatened with robbery at a "red-light incident" during which three young Indonesians struck his car with bats while shouting demands for money; 4) he witnessed his mother being "molested" at a shopping mall (e.g., a group of four Indonesians surrounded them on an escalator and began touching his mother in an inappropriate manner); 5) he was knocked off of his motorcycle and beaten by a group of political demonstrators; 6) he was cheated by customers in his business; and 7) while attending mass, a gang of native Indonesians stopped in front of the church, made loud noises with their motorcycles and then threw rocks at the church windows.  Soetiono wrapped up his testimony by recounting another incident involving a bomb found in a church, although the church was not one that

2

the conclusion of the hearing, the IJ denied petitioners the relief requested. While noting her belief that Soetiono's testimony was generally truthful, the IJ found an absence of evidence amounting to persecution. The IJ also concluded that Soetiono's fear of returning to Indonesia simply because he was Chinese was not sufficient to sustain an asylum claim. His claim based on membership in a wealthy social group fared no better because, as noted by the IJ, wealth is not a recognized ground for asylum. The IJ thus concluded that Soetiono failed to establish that he suffered past persecution on account of a protected ground, and likewise failed to establish that he will suffer future persecution. There was no evidence of torture presented.

The BIA thereafter denied petitioners' appeal, as well as a motion to reopen/reconsider. Review of both orders was sought in this Court. The details of the ensuing consolidated proceedings need not be set forth at length here. Suffice it to say that the government eventually filed an unopposed motion seeking to have the petition for review dismissed and the matter remanded to the BIA for further consideration of petitioners' claims. We granted that request. On remand, the BIA vacated its orders summarily affirming the IJ's decision denying relief and denying petitioners' motion to reopen and for reconsideration. Accordingly, the BIA remanded the matter to the IJ for further proceedings. The IJ was instructed to afford all parties the opportunity to update

_____

Soetiono belonged to or attended, and of an incident that occurred in March 2001, during which he witnessed the destruction of a car driven by a Javanese who attempted to pass through a large demonstration.

the record and to provide additional testimony, if appropriate.

Petitioners took advantage of the opportunity to supplement the record and filed, <u>inter alia</u>, an affidavit from Dr. Jeffrey Winters, who has been recognized by the Immigration Court as an expert witness on the background conditions in Indonesia, and the Department of State <u>Report on Human Rights Practices</u> for Indonesia for 2007. Testimony was provided by petitioner Ligito and Dr. Winters. Ligito testified that she fears returning to Indonesia because, as a Chinese woman, she could possibly be the victim of sexual assault, murder and intimidation by native Indonesians. Besides hearing insulting statements, Ligito did not relate any incidents which were directed towards her personally other than what she believed were sexually harassing acts by local men while riding on public transportation. She also recounted an incident during which her mother-in-law was called a derogatory name by a group of men while being pushed and having a Bible she was carrying kicked after it had been dropped.

The bulk of the testimony offered on remand came from Dr. Winters. Dr. Winters basically testified that, in his opinion, ethnic Chinese in Indonesia have a valid claim for asylum. While noting that Indonesia is a multiracial country, Winters stated that ethnic Chinese make up a small percentage of the population and are, therefore, subject to attacks undergirded by racial hatred. Winters further testified that while the government is supposed to serve as a security force, it does not offer protection to the ethnic Chinese. As for the changes noted in the Department of State Report, Dr. Winters testified that those changes are merely superficial and do not change societal attitudes

4

actually in existence. According to Dr. Winters, all ethnic Chinese are viewed as Christians, and are regarded by some of the extremists as their primary opponents. Finally, the IJ considered the report submitted by Jana Mason, whose position is that Christians are targeted for persecution in Indonesia.

The IJ once again denied petitioners relief. The IJ noted that Ligito's testimony was that she did not experience any harm in Indonesia on account of her ethnicity or religion. The IJ further determined that the incidents recounted by Soetiono did not rise to the level of persecution. Moreover, the IJ concluded that the information contained in the Department of State reports does not support petitioners' position that they would be persecuted upon their return to Indonesia on account of any of the five enumerated grounds, and that the conflicting report of Dr. Winters was not sufficient to establish a pattern or practice of persecution of ethnic Chinese in Indonesia. Having failed to establish past persecution or the possibility of future persecution, the IJ concluded that petitioners failed to establish their eligibility for asylum. The IJ continued by determining that petitioners likewise failed to establish their eligibility for withholding of removal under INA ' 241(b)(3), or relief under CAT. The IJ did, however, grant petitioners' application for voluntary departure.

The BIA dismissed petitioners' appeal from that decision in an order issued on February 26, 2010. Having conducted a *de novo* review, the BIA concluded that petitioners had failed to establish past persecution or a well-founded fear of future persecution on account of a protected ground. The BIA further concluded that petitioners

5

failed to establish that their fears are distinct from those felt by all other ethnic Chinese Christians in Indonesia, that all ethnic Chinese Christians in Indonesia have a well-founded fear of persecution, or that there is a pattern or practice of persecution against ethnic Chinese Christians throughout Indonesia. The BIA continued by holding that petitioners thus necessarily failed to satisfy the higher burden for withholding of removal, and presented insufficient evidence to establish a possibility of "torture" and an entitlement to protection from removal under the CAT.

With respect to petitioners' evidence regarding a pattern or practice of persecution, the BIA concluded that the U.S. Department of State country reports – as opposed to the testimony of Dr. Winters – constitute the best evidence of current conditions of Indonesia, and that those reports do not make for a record demonstrating persecution that is sufficiently "systemic, pervasive, or organized" so as to constitute a pattern or practice of persecution. The BIA further found that petitioners' newly submitted evidence did not warrant a remand to the IJ.[3] Accordingly, the BIA dismissed petitioners' appeal. It further denied a motion for remand that petitioners filed during the pendency of the appeal wherein they sought to introduce the additional reports regarding

---

[3] Petitioners submitted:

    (1)    "Indonesia's Consolidated Report of (sic) on the Implementation of CERD – Consolidated Report of the Republic of Indonesia on the Implementation of the International Convention on the Elimination of all Forms of Racial Discrimination (ICERD);" and

    (2)    "Indonesian NGO Alternative Report – ICERD."

country conditions in Indonesia and the Ninth Circuit's decision in <u>Wakkary v. Holder</u>, 558 F.3d 1049 (9th Cir. 2009). The BIA found the reports to be essentially cumulative of the record evidence and insufficient to establish a pattern or practice of persecution, and the Ninth Circuit case immaterial to its decision. A timely petition for review followed.

## II.

On review, petitioners challenge the BIA's determination that Soetiono did not suffer past persecution in Indonesia, as well as its conclusion that petitioners failed to show a pattern or practice of persecution of ethnic Chinese Christians.[4] We have jurisdiction under 8 U.S.C. § 1252(a)(1). Because the BIA "issue[d] its own decision on the merits, rather than a summary affirmance, we review its decision, not that of the IJ." <u>Catwell v. Att'y Gen.</u>, 623 F.3d 199, 205 (3d Cir. 2010) (citing <u>Sheriff v. Att'y Gen.</u>, 587 F.3d 584, 588 (3d Cir. 2009)). "The BIA's ruling on an asylum petition is 'conclusive unless manifestly contrary to the law and an abuse of discretion.' 8 U.S.C. § 1252(b)(4)(D). We review the facts upon which the BIA's decision rests to ensure that they are supported by substantial evidence from the record considered as a whole, <u>Espinosa-Cortez v. Att'y Gen.</u>, 607 F.3d 101, 106 (3d Cir. 2010), and we will reverse based on a factual error only if any reasonable fact-finder would be 'compelled to conclude otherwise,' 8 U.S.C. § 1252(b)(4)(B)." <u>Huang v. Att'y Gen.</u>, 620 F.3d 372, 379 (3d Cir. 2010). The BIA's legal conclusions are reviewed *de novo*. <u>Id.</u>

---

[4] Petitioners do not argue their CAT claim, thus we deem it waived. <u>See</u> <u>Lie v. Ashcroft</u>, 396 F.3d 530, 532 n.1 (3d Cir. 2005).

7

**III.**

We must reject petitioners' contention that the record evidence compels a conclusion contrary to the BIA's determination that the harm Soetiono suffered was not sufficiently severe – even when considered in the aggregate and in the context of the apparent "ethnic motivation" behind it – to constitute persecution. As petitioners themselves recognize, we have consistently held that ethnic taunts and isolated criminal acts similar to those recounted by Soetiono, though reprehensible and unfortunate, are not sufficiently severe to constitute persecution. See, e.g., Lie, 396 F.3d at 536. While Soetiono experienced two acts of physical violence and received a threat, we cannot conclude that his case is sufficiently distinguishable from Lie so as to *compel* a finding of past persecution where neither attack resulted in the need for him to seek medical attention, the threat by the taxi driver was never acted upon in any respect, and he suffered no physical harm from any of the other noted incidents. See id. at 533, 536 (explaining that the BIA correctly applied this Court's standard for determining past persecution in concluding that an ethnic Chinese woman in Indonesia had not suffered past persecution where, inter alia, her husband's store was robbed, her house was broken into, she was subjected to racial epithets, money and jewelry were stolen from her, and she was stabbed); see also Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) ( "[O]ur cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution.").

Moreover, although we have "defined persecution as 'threats to life,

8

confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom,'" Camara v. Att'y Gen., 580 F.3d 196, 202 (3d Cir. 2009) (quoting Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d Cir. 1993), the record is bereft of any evidence regarding the specific economic impact of any acts of discrimination or harassment Soetiono suffered or of any particular mental suffering that resulted from his experiences.[5] Accordingly, because the mistreatment documented in the record presented is along the same lines as that in Lie, we can find no fault with the BIA's conclusion that it did not rise to the level of persecution.

Petitioners' argument that they face a clear probability of persecution because the evidence established a "pattern or practice" of persecution of ethnic Chinese Christians in Indonesia fares no better. In rejecting petitioners' pattern or practice claim, the BIA found that the country conditions report in evidence did not establish "systemic, pervasive, or organized persecution" of ethnic Chinese in Indonesia. On the record presented, we cannot conclude that the BIA's findings are not supported by substantial evidence. Despite their contention to the contrary, petitioners have not distinguished their argument, or the record it is built on, from similar claims that this Court has rejected in the past. See, e.g., Wong v. Att'y Gen., 539 F.3d 225, 233-34 (3d Cir. 2008) (rejecting as "without merit" the contention that "the [2003 and 2004] State Department reports and

---

[5] As respondent notes, the BIA appears to have considered Ligito's claim as well despite her status as a derivative applicant. See Certified Administrative R. (A.R.) at 3-5. However, Ligito provided no testimony regarding economic impact and – with respect to mental suffering – expressed only general feelings of apprehension when walking past crowds. Id. at 313.

other background materials document a pattern or practice of persecution of Chinese

Christians in Indonesia"); Lie, 396 F.3d at 537-58 (finding that the 1999 Country Report

indicated a sharp decline in violence against Chinese Christians in Indonesia and that the

evidence of violence submitted was not sufficiently widespread as to constitute a pattern

or practice). Although petitioners relied on the State Department Country Report for

2007 (released in March 2008), our most recent decisions have noted that the reports

from 2005 to 2007 document a trend toward "similar or improved" treatment for Chinese

Christians. See, e.g., Wong, 539 F.3d at 233-34. We thus agree with respondent that the

Department of State report for 2007 does not appear to assist the petitioners in

distinguishing their case from Lie and Wong.

We have likewise reviewed the affidavit and testimony of petitioners'

expert and cannot conclude that they establish "systemic, pervasive, or organized"

persecution against Chinese Christians in Indonesia. While Dr. Winters' testimony

criticizes the government's "piecemeal" reform efforts, A.R. 347, and predicts future

violence, A.R. 342–53, the BIA chose to base its factual findings on the State Department

reports. The BIA chose this course "[a]fter reviewing all of the evidence in this case,

including the testimony from the [petitioners'] expert witness." A.R. 5. Regardless of

the criticism petitioners lodge against those reports, we can find no reversible error with

respect to the BIA's decision in this regard as we have previously stated that "Country

reports … are the most appropriate and perhaps the best resource for information on

political situations in foreign nations." Zubeda v. Ashcroft, 333 F.3d 463, 477-78 (3d

10

Cir. 2003).

Of course, having failed to establish petitioners' eligibility for asylum, the BIA correctly concluded that they could not satisfy the higher burden required for withholding of removal. Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004).

Finally, insofar as petitioners may be seeking to challenge the BIA's determination that a remand was not warranted, we find no abuse of discretion on the part of the BIA in declining petitioners' invitation to return this matter to the IJ for a plenary hearing. See Huang v. Att'y Gen., 620 F.3d at 390. Petitioners' contention that the BIA never addressed the new evidence is erroneous. We have repeatedly stated that the BIA need not write an exegesis on every document submitted, see Wong, 539 F.3d at 231, and petitioners have failed to satisfy their burden of showing that the BIA actively failed to consider the evidence. See Abdulai v. Ashcroft, 239 F.3d 542, 550 (3d Cir. 2001). The BIA noted that the Ninth Circuit decision arises outside of this Circuit, and determined that the CERD Report and the NGO Report are "essentially cumulative of evidence previously of record and fail to establish that there is a pattern or practice of persecution against ethnic Chinese Christians throughout Indonesia." A.R. 6. Petitioners challenge the BIA's determination that the evidence is cumulative in nature, but the CERD Report itself notes that the developments covered therein primarily span the period from 1999 to 2004. A.R. 90.

Moreover, under our deferential standard of review, we cannot agree with petitioners that their submissions demonstrated changed country conditions. The NGO

11

Report, which petitioners describe as a "scathing" commentary on the Indonesian government's summary of its record on human rights and discrimination, <u>see</u> Pet'rs' Br. at 10, is more equivocal and technical than petitioners imply. Although the report criticizes the government's response to past atrocities like the May 1998 riots, notes the inefficiencies of the country's court system in dealing with discriminatory acts, and takes issue with the manner and pace in which the government has implemented reforms, we can find no fault with the BIA's implicit determination that it did not show changed country conditions implicating renewed persecution of ethnic Chinese Christians. Accordingly, petitioners failed to demonstrate that a remand was warranted.

**IV.**

For the foregoing reasons, we deny the petition for review.