**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3942
_____

ROBERT BAUTISTA,
                                 Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                 Respondent
_____

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS
(Agency No. A038-509-855)
Immigration Judge: Honorable Walter A. Durling
_____

Submitted Under Third Circuit LAR 34.1(a)
September 20, 2012
_____

Before: AMBRO, GREENAWAY, JR., and O'MALLEY,[*]
*Circuit Judge*s.

(Opinion Filed:  February 28, 2014)

Raymond G. Lahoud, Esq.
Baurkot & Baurkot
227 South 7th Street
Easton, PA 18042

*Counsel for Petitioner*

Jacob A. Bashyrov, Esq.
Lindsay B. Glauner, Esq.
Eric H. Holder, Jr., Esq.
Thomas W. Hussey, Esq.
Sarah Maloney, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

*Counsel for Respondent*

---

[*] Hon. Kathleen M. O'Malley, Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

_____

OPINION

_____

GREENAWAY, JR., *Circuit Judge*.

Petitioner Robert Bautista, a legal permanent resident, was ordered removed from the United States by an immigration judge ("IJ"). The IJ found him removable because he is inadmissible under § 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA") as an alien convicted of a crime involving moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(i)(I). The IJ also found him ineligible for cancellation of removal under § 240A(a) of the INA because his New York conviction for attempted arson constituted an aggravated felony. 8 U.S.C. § 1229b(a). Bautista appealed to the Board of Immigration Appeals ("BIA"), which dismissed his appeal. The BIA agreed that the arson conviction fell within the relevant definition of an aggravated felony under § 101(a)(43) of the INA. 8 U.S.C. § 1101(a)(43).

Bautista filed a timely petition for review in this Court. We will grant the petition because the New York attempted arson conviction is not an aggravated felony in respect to collateral immigration consequences under the INA. Applying the categorical approach, as we must, the New York statute under which Bautista was convicted does not match the elements of 18 U.S.C. § 844(i), the corresponding federal statute under the INA. 8 U.S.C. § 1101(a)(43)(E)(i). A conviction under that New York arson statute cannot qualify as an aggravated felony because it lacks the jurisdictional

3

element of § 844(i), which the Supreme Court has found to be a critical and substantive element of that arson offense. We vacate the BIA ruling and remand to the BIA for further consideration in light of this opinion.

## I.    BACKGROUND

Bautista is a citizen of the Dominican Republic, where he was born in 1974. He was admitted to the United States as a legal permanent resident in 1984 and attended school in the Bronx. In 1996, he married Yenny Bautista, also a legal permanent resident. They have three minor children, all of whom are United States citizens. Bautista's mother is also a United States citizen. Bautista owns and operates an automobile repair business in Easton, Pennsylvania, with seven employees.

Bautista has two criminal convictions. In 2001, he was charged in New Jersey with uttering a forged instrument, in violation of the New Jersey Code of Criminal Conduct, N.J. Stat. Ann. § 2C:21-1a(3). He pled guilty to that crime in 2004 and received a sentence of one year of probation. In 2003, after trial in the Bronx, New York, he was convicted of attempted arson in the third degree, in violation of New York Penal Law §§ 110 and 150.10. He was sentenced to five years of probation.

In 2009, while returning from a trip to the Dominican Republic, Bautista was stopped and detained by Customs and Border Patrol officials at John F. Kennedy International Airport. He was released upon Deferred Inspection status, pending a secondary inspection, and, the following spring, the Department of Homeland Security instituted removal

4

proceedings against him based on his inadmissibility under § 212(a)(2)(A)(i)(I) of the INA as an alien convicted of a crime involving moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(i)(I). At a hearing before the IJ, Bautista admitted that he was convicted of attempted arson, and the IJ determined that he was inadmissible.

At an immigration hearing on April 8, 2010, Bautista applied for cancellation of removal but the Government moved to pretermit the application on the ground that his attempted arson conviction counts as an aggravated felony under § 101(a)(43)(E) of the INA, making him ineligible for cancellation under § 240A(a)(3) of the INA. Bautista also applied for a waiver of inadmissibility under § 212(h) of the INA, which the Government also moved to pretermit based on the attempted arson conviction. 8 U.S.C. § 1182(h). The IJ initially denied the Government's motions but granted them after the Government filed motions for reconsideration. On February 8, 2011, the IJ ordered Bautista removed.

Bautista appealed only the cancellation of removal issue to the BIA. He argued that his attempted arson conviction was not an aggravated felony described in § 101(a)(43)(E)(i) of the INA, which lists arson offenses under federal law. 8 U.S.C. § 1101(a)(43)(E)(i). The penultimate sentence of § 101(a)(43) explains that an aggravated felony is "an offense described in this paragraph whether in violation of Federal or State law." 8 U.S.C. § 1101(a)(43). Bautista argued that, because the New York statute under which he was convicted does not require that the object of the arson be used in interstate commerce, as the corresponding federal statute does, his New York conviction

5

was not one "described in" the aggravated felony definition of § 101(a)(43)(E)(i).

On October 13, 2011, the BIA rejected this argument. Bautista asks this Court to review the BIA decision, renewing his argument that the absence of the federal jurisdictional element in the New York arson statute exempts it from the § 101(a)(43)(E)(i) definition of an aggravated felony. For the following reasons, we will grant Bautista's petition.

## II.    JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15 and we have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a)(1).

Where, as here, the BIA issues a written decision on the merits, we review its decision and not the decision of the IJ. *Catwell v. Att'y Gen.*, 623 F.3d 199, 205 (3d Cir. 2010).

Because the basis for Bautista's removal is a conviction for a crime involving moral turpitude, the REAL ID Act limits our jurisdiction to "constitutional claims or questions of law". 8 U.S.C. § 1252(a)(2)(D); *see Catwell v. Attorney Gen. of U.S.*, 623 F.3d 199, 205 (3d Cir. 2010) (noting limited jurisdiction to review removal orders based on aggravated felony convictions). We review legal determinations made by the BIA de novo, subject to the principles of deference articulated in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). *See Catwell*, 623 F.3d at 205.

## III.   ANALYSIS

In reviewing an agency decision, we must give deference to a reasonable agency interpretation of a statute unless that interpretation is inconsistent with a clearly expressed congressional intent. *Chevron*, 467 U.S. at 842-44. A statute cannot be deemed ambiguous, however, until the court exhausts the aid of "traditional tools of statutory construction." *Chevron*, 467 U.S. at 843 n.9. Here, we find that the BIA's construction with respect to the classification of state convictions as aggravated felonies under § 101(a)(43)(E)(i) is inconsistent with Congress's expressed intent.

Our dissenting colleague observes that the statute is "at best ambiguous" by the virtue of our disagreement over the construction of the statute. While we sympathize with this view, not every difficult question of statutory construction amounts to a statutory gap for a federal agency to fill. The Supreme Court's *Chevron* jurisprudence is replete with instances where disagreements in the lower courts did not prevent the Court from discerning Congressional intent from complex statutory provisions. *See, e.g.*, *Food & Drug Admin. v. Brown & Williamson Tobacco*, 529 U.S. 120 (2000) (holding that Congress had expressed an intention on the precise question of whether the FDA could regulate tobacco notwithstanding numerous cases in which the courts of appeal had found ambiguity in closely related statutory language); *N.L.R.B. v. Health Care & Ret. Corp. of Am.*, 511 U.S. 571, 580 (1994) (holding that "the Board's test is inconsistent with both the statutory language and th[e] Court's precedents"). To conclude otherwise would be to find that every time there is a disagreement about statutory construction, we accord

7

deference to agencies.  This is not what *Chevron* instructs us to do.[1]

In light of our forthcoming discussion, we find here that Congress has spoken with sufficient clarity to make deference inappropriate.

**A. Statutory Construction of § 101(a)(43) of the INA**

Bautista applied for cancellation of removal under the INA, which is only available to an alien who "has not been convicted of any aggravated felony."  8 U.S.C. § 1229b.  An "aggravated felony" is defined by § 101(a)(43) of the INA, which enumerates a number of offenses that qualify as aggravated felonies.  8 U.S.C. § 1101(a)(43).  Primarily,

[1] Consider *Immigration & Naturalization Serv. v. Cardoza-Fonseca*, 480 U.S. 421 (1987).  In that case, the Supreme Court was tasked with deciding whether the plain meaning of the statutory language indicated a congressional intent that the proof standards under §§ 208(a) and 243(h) of the INA should differ.  The Court engaged in an extensive investigation into the structure and the legislative history of the statute and concluded that Congress did not intend the two standards to be identical.  This conclusion was reached notwithstanding that dissenting Justices found the statute to be "far more ambiguous than the Court [did]." 480 U.S. at 459 (Powell, J., dissenting).  In doing so, the *Cardoza-Fonseca* Court pronounced that "[t]he question whether Congress intended the [proof standards under §§ 208(a) and 243(h) of the INA] to be identical is a pure question of statutory construction for the courts to decide."  *Cardoza-Fonseca*, 480 U.S. at 446.

interpretation of § 101(a)(43) revolves around three features of the statute's structure: its references to a category of aggravated felonies with generic offenses or federal statutes, its usage of "described in" or "defined in" when utilizing federal statutes, and its penultimate sentence.[2]

Due to the wide structural and linguistic variation among state statutes that criminalize the same type of conduct, § 101(a)(43) references some aggravated felonies with their generic offense, such as "murder" or "theft", while it references other aggravated felonies with a specific federal criminal statute, such as 18 U.S.C. § 922(g)(1) (for possession of a weapon by a felon) or 18 U.S.C. § 844(i) (for arson). When referencing a specific federal statute, the INA does so in two ways: It either deems that an aggravated felony is an offense "described in" a federal statute or that an aggravated felony includes criminal conduct "defined in" a federal statute. For example, § 101(a)(43)(E)(i) covers any offense "described in" 18 U.S.C. § 844(i).

We must assume that Congress intended some meaning through its use of "described in" versus "defined in" and this intention can be inferred by observing the pattern of § 101(a)(43) and the federal statutes that it references. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is

---

[2] We refer to a "generic" offense as an offense described by its "commonly understood" elements, such as "burglary" or "theft", rather than by the elements of a particular federal or state statute. *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013); *see Nijhawan v. Holder*, 557 U.S. 29, 37 (2013).

generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (alteration in original) (internal quotation marks omitted)).  Section 101(a)(43) uses "defined in" when the reference to a federal statute is preceded by criminal conduct terms, such as "illicit trafficking of drugs" or "crime of violence", which Congress has chosen to define by reference to a federal statute.  In these "defined in" subsections of § 101(a)(43), the state conviction need not be punishable under that federal statute but need only include the listed criminal conduct, as it is "defined" by the federal statute.  This elicits a sensible interpretation of legislative intent when observing that the federal statutes following the "defined in" phrasing are the *definitional* sections of criminal statutes or sections that explicitly *define* the listed criminal conduct.  *See* 8 U.S.C. § 1101(a)(43)(B) (referencing 21 U.S.C. § 802, a "Definitions" section, which defines "controlled substance"); *id.* (referencing 18 U.S.C. § 924, which defines "drug trafficking crime" in § 924(c)(2)); 8 U.S.C. § 1101(a)(43)(C) (referencing 18 U.S.C. § 921, a "Definitions" section, which defines "destructive devices"); *id.* (referencing 18 U.S.C. § 841(c), another "Definitions" section, which defines "explosive materials"); 8 U.S.C. § 1101(a)(43)(F) (referencing 18 U.S.C. § 16, entitled "Crime of violence defined", which defines "crime of violence").

In contrast, Congress employs "described in" to classify a state conviction as an aggravated felony when an offense would be punishable under a federal statute because the conduct or state statute of the conviction encompasses the same elements as a federal statute.  These federal statutes are not definitional but, rather, describe a specific type of offense. *See, e.g.*, 8 U.S.C. § 1101(a)(43)(E), (H)-(J), (L).  In drafting § 101(a)(43), Congress often grouped several federal criminal

10

statutes of like kind together in order to achieve any desired breadth in scope, which would serve to describe the targeted offenses under a more generic category. *See, e.g.*, 8 U.S.C. § 1101(a)(43)(E)(i) (grouping 18 U.S.C. §§ 842(h), (i), 844(d)-(i) together as crimes "relating to explosive materials offenses").

Lastly, § 101(a)(43) includes a penultimate sentence that clarifies the relationship of state convictions to the overall statutory scheme of § 101(a)(43). The penultimate sentence reads as follows:

> The term [aggravated felony] applies to an offense described in this paragraph *whether in violation of Federal or State law* and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years.

*Id.* (emphasis added). By adding this sentence, Congress expressed its intention that both state and federal offenses may serve as aggravated felonies under § 101(a)(43). As the Supreme Court explained, the penultimate sentence "has two perfectly straightforward jobs to do: it provides that a generic description . . . covers either [a state or federal conviction], and it confirms that a state offense whose elements include the elements of a felony punishable under the [referenced federal statute] is an aggravated felony." *Lopez v. Gonzalez*, 549 U.S. 47, 57 (2006).

Pertinent to our inquiry, § 101(a)(43)(E)(i) lists as aggravated felonies the offenses described in "section 842(h)

11

or (i) of Title 18, or section 844(d), (e), (f), (g), (h), or (i) of that title (relating to explosive materials offenses)." 8 U.S.C. § 1101(a)(43)(E)(i). Of those offenses, the one that most closely corresponds to Bautista's conviction is 18 U.S.C. § 844(i). That statute states as follows:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property *used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce* shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

*Id.* (emphasis added).

Bautista was convicted of attempted arson in the third degree, in violation of New York Penal Law §§ 110 and 150.10. Section 150.10 states that "[a] person is guilty of arson in the third degree when he intentionally damages a building or motor vehicle by starting a fire or causing an explosion." N.Y. Penal Law § 150.10. Section 110 is the general attempt provision. N.Y. Penal Law § 110. Bautista does not dispute that the New York statute and the federal statute contain three identical, substantive elements: 1) damaging a building or vehicle, 2) intentionally, 3) by using fire or explosives. The Government does not dispute that the jurisdictional element of § 844(i), requiring that the object of arson be "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce," is not contained in the New York statute. What Bautista urges is

12

that the jurisdictional element is also a substantive element and, consequently, that his conviction cannot qualify as an aggravated felony.

Based on the opinions of several of our sister circuits, the Government argues that this jurisdictional element is not substantive and, therefore, is not an element describing an offense under § 844(i). *See Nieto Hernandez v. Holder*, 592 F.3d 681, 685-86 (5th Cir. 2009) (analyzing § 922(g)(1) under § 101(a)(43)(E)(ii)); *Negrete-Rodriguez v. Mukasey*, 518 F.3d 497, 501-03 (7th Cir. 2008) (same); *United States v. Castillo-Rivera*, 244 F.3d 1020, 1023-24 (9th Cir. 2001) (same); *see also Spacek v. Holder*, 688 F.3d 536, 538-39 (8th Cir. 2012) (following the Ninth, Seventh, and Fifth Circuits in analyzing 18 U.S.C. § 1962 under § 101(a)(43)(J)).

While Bautista's argument has been rejected by several of our sister circuits in regard to offenses described in § 922(g)(1), we find it congruous with the structure of the INA and Supreme Court precedent regarding § 844(i). *Cf. Maislin Industries v. Primary Steel, Inc., et al.*, 497 U.S. 116, 131 (1990) ("Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of *stare decisis,* and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning.").

## B. Use of the Categorical Approach

In order to determine whether a state conviction is an aggravated felony within the meaning of § 101(a)(43), we generally compare the elements provided by the federal law to the conduct and state statute of conviction, as set forth by

13

the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 601 (1990). *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684-85 (2013); *Aguilar v. Att'y Gen.*, 663 F.3d 692, 695 (3d Cir. 2011). In employing this "categorical approach", we essentially assess whether the state statute and the conduct actually punished by the conviction amounts to a felony punishable under the corresponding federal statute. *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2588 (2010) (explaining that the categorical approach determines whether "the state offense . . . is 'punishable as a felony under federal law'" (quoting *Lopez v. Gonzales*, 549 U.S. at 60)); *see Catwell*, 623 F.3d at 206 n.11; *Aguilar*, 663 F.3d at 695. As such, the purpose of the categorical approach is to sort out which state offenses are properly included within the substance of a federal statute or generic offense and which are not.

The categorical approach is usually undertaken as a "formal categorical approach", which strictly requires us to "look to the elements of the statutory state offense, not to the specific facts [of the case], reading the applicable statute to ascertain the least culpable conduct necessary to sustain conviction under the statute." *Aguilar*, 663 F.3d at 695 (quoting *Denis v. Att'y Gen.*, 633 F.3d 201, 206 (3d Cir. 2011)); *Borrome v. Att'y Gen.*, 687 F.3d 150, 155 (3d Cir. 2012). In certain, limited circumstances, a "modified categorical approach" may be appropriate, where a state statute "contain[s] several different crimes, each described separately." *Moncrieffe*, 133 S. Ct. at 1684; *Descamps v. United States*, 133 S. Ct. 2276, 2284-85 (2013) (limiting the modified categorical approach to statutes that create alternative crimes by including disjunctive elements); *see also Taylor*, 495 U.S. at 600-01; *Denis*, 633 F.3d at 206. In such a

14

case, "a court may determine which particular offense the noncitizen was convicted of by examining" a limited set of documents from the record of conviction. *Moncrieffe*, 133 S. Ct. at 1684. However, the modified categorical approach "acts not as an exception, but instead as a tool" to the implementation of the categorical approach, and it "retains the categorical approach's basic method: comparing [the conviction's] elements with the generic offense's." *Descamps*, 133 S. Ct. at 2285. This approach, therefore, does not invite inquiry into the facts underlying the conviction. *Id.*

Here, we are not faced with one of those narrow circumstances and, so, we limit our inquiry to the formal categorical approach.[3] The New York arson statute does not describe multiple crimes with alternative elements, but only describes a single crime with a single set of indivisible elements. *Descamps*, 133 S. Ct. at 2285.

By its design, application of the categorical approach depends upon the substantive nature of the offense. For instance, the categorical approach for illicit drug trafficking under § 101(a)(43)(B) takes into account different

---

[3] In *Nijhawan v. Holder*, 557 U.S. 29, 36 (2009), the Supreme Court broke from the categorical approach and engaged in a "circumstance-specific approach". We do not venture down such a path since the Supreme Court limited such an approach to subsections of § 101(a)(43) that include "in which" requirements written directly into the INA by Congress. *Id.* at 38-40. In the subsection at issue here, § 101(a)(43)(E)(i), the jurisdictional element is not written directly into the INA by Congress but resides as an element in the enumerated federal criminal statutes. *See Moncrieffe*, 133 S. Ct. at 1691.

considerations than the categorical approach for possession of a firearm by a felon under § 101(a)(43)(E)(ii); under § 101(a)(43)(B), it matters whether the state statute includes a trafficking element, whether the state statute criminalizes a sufficiently large quantity of drugs, and whether remuneration is required. *See Moncrieffe*, 133 S. Ct. at 1685-86; *see, e.g.*, *Catwell*, 623 F.3d at 206-07. Or, with crimes of violence under § 101(a)(43)(F), it matters whether the state conviction punishes the proper level of mens rea. *See, e.g.*, *Aguilar*, 663 F.3d at 695-700. For this reason, the rationale that our sister circuits have developed in applying the categorical approach to § 922(g)(1) under § 101(a)(43)(E)(ii) has limited import to our categorical approach to § 844(i) under § 101(a)(43)(E)(i). Thus, while both § 922(g)(1) and § 844(i) fall under the same subsection, § 101(a)(43)(E), they are still distinct categories of aggravated felonies and that distinction bears on the application of the subsection.

In following the rationale of our sister circuits, the BIA removed the jurisdictional element from its categorical approach analysis and ruled that Bautista's conviction was an aggravated felony because all the "substantive" elements of the New York attempted arson offense corresponded to the substantive elements of § 844(i). *Bautista*, 25 I. & N. Dec. 616, 619-21 (BIA 2011). Analyzing the language of § 101(a)(43), the BIA concluded that the penultimate sentence makes clear that "'the crimes specified are aggravated felonies regardless of whether they fall within the jurisdiction of the federal government, a state, or, in certain cases, a foreign country.'" *Id.* at 619-20 (quoting *Vasquez-Muniz*, 23 I. & N. Dec. 207, 210 (BIA 2002)). The BIA's decision relied in substantial part on its previous interpretation of § 101(a)(43)(E) in *In re Vasquez-Muniz*, 23 I. & N. Dec. 207

16

(BIA 2002). In that decision, the BIA decided that conviction for possession of a firearm by a felon under California law was an offense "described in" § 922(g)(1) under § 101(a)(43)(E)(ii) even though the California statute lacked the jurisdictional element of § 922(g)(1). *Id.* at 208. In *Vasquez-Muniz*, the BIA determined that the jurisdictional element of § 922(g)(1) was not integral to the categorical approach analysis because the language in the penultimate sentence of § 101(a)(43) confirmed that "the [state] crimes specified are aggravated felonies regardless of whether they fall within the jurisdiction of the federal government [or] a state." *Id.* at 211. The *Vasquez-Muniz* decision went on to posit that "if state crimes must include a federal jurisdictional element in order to be classified as aggravated felonies, then virtually no state crimes would ever be included in section 101(a)(43)(E), despite the statute's language to the contrary." *Id.* Based on *Vasquez-Muniz*, the BIA in this case reasoned that, if the absence of the jurisdictional element were allowed to remove state convictions from the aggravated felony category, state convictions would rarely, if ever, qualify as aggravated felonies. *Bautista*, 25 I. & N. Dec. at 620.

The rationale of the BIA follows that of our three sister circuits, all of which have interpreted § 101(a)(43)(E) in the § 922(g)(1) context. *See Nieto Hernandez v. Holder*, 592 F.3d 681, 685 (5th Cir. 2009) (finding that the "interstate commerce element is simply an element that ensures federal jurisdiction" and that requiring it to be present in a state offense "would undermine Congress's evident intent that jurisdiction be disregarded in applying" the definition of an aggravated felony); *Negrete-Rodriguez v. Mukasey*, 518 F.3d 497, 501-03 (7th Cir. 2008) (holding that, "[a]lthough not 'mere surplusage,' a jurisdictional element does little more

17

than ensure that the conduct regulated in a federal criminal statute is within the federal government's limited power to proscribe" and, therefore, finding the state offense to be an aggravated felony); *United States v. Castillo-Rivera*, 244 F.3d 1020, 1023-24 (9th Cir. 2001) (holding that the interstate commerce element is "'merely a jurisdictional basis'" and, therefore, finding the state offense to be an aggravated felony).[4]

In ascribing legislative intent to the phrasing of § 101(a)(43)(E), our sister circuits have posited that the use of "described in", which each asserts is broader than "defined in", can reach conduct beyond the bare elements of the federal statutes to which they are tied. *See Castillo-Rivera*, 244 F.3d at 1023. As a result, these circuits have concluded that Congress intended for the "described in" categories to be broad enough to encompass state statutes that do not include the jurisdictional element of the federal statute cognate. Because the Seventh, Fifth, and Eighth Circuits followed the Ninth Circuit's reasoning in *Castillo-Rivera*, a discussion of the Ninth Circuit's opinion suffices to examine the rationale of our sister circuits.

In *Castillo-Rivera*, an illegal reentry case involving a Sentencing Guidelines enhancement, the Ninth Circuit ruled that the appellant's state conviction did not need a jurisdictional element to qualify as an aggravated felony under § 101(a)(43)(E)(ii). 244 F.3d at 1023-24. Based on the penultimate sentence of § 101(a)(43) and the deliberate use of

---

[4] The fourth of our sister circuits, the Eighth Circuit, applied the same rationale to 18 U.S.C. § 1962 under § 101(a)(43)(J). *Spacek*, 688 F.3d at 538.

"described in", the Ninth Circuit presumed that Congress desired that the aggravated felony categories include more than a negligible amount of state convictions. *Id.* at 1023. The Ninth Circuit reasoned that the penultimate sentence of § 101(a)(43), which emphasizes that aggravated felonies can be "in violation of Federal or State law," plainly indicated that Congress intended for state convictions to count as aggravated felonies; the fact that only a minute number of state criminal statutes have a jurisdictional element further convinced the Ninth Circuit that Congress must not have intended for the jurisdictional element of federal statutes to hamper *Taylor*'s categorical approach. *Id.* at 1023-24. Second, meaning was read into Congress's decision to use "defined in" for some aggravated felony subcategories and "described in" for others. *Id.* at 1023. The Ninth Circuit reasoned that the use of "described in" was a deliberate choice by Congress to capture more than a handful of state convictions within § 101(a)(43)(E). Lastly, relying on *United States v. Lopez*, 514 U.S. 549 (1995), the Ninth Circuit determined that the jurisdictional element was simply a jurisdictional requirement detached from the substantive nature of the offense, included only to confer Congress with the authority to pass federal statutes. *Id.* at 1024.

We agree with our sister circuits that the penultimate sentence conveys Congress's intent to qualify more than a negligible number of state convictions as aggravated felonies. We do not find, however, that the structure of § 101(a)(43)(E) evidences Congress's intent to accomplish that objective through the use of "described in" rather than "defined in" as a means to always discard jurisdictional elements of federal felonies for the purposes of § 101(a)(43)(E). If Congress had intended to exclude the jurisdictional element of all federal

19

statutes from the categorical approach analysis, it could simply have included a different penultimate sentence stating that jurisdictional elements should be ignored, as it clearly expressed its directives regarding specific subsections elsewhere in § 101(a)(43). *See, e.g.*, 8 U.S.C. § 1101(a)(43)(D), (M)(i) (setting monetary thresholds for these subsections); *id.* § 1101(a)(43)(F) (excluding "purely political offense[s]" under this subsection); *id.* § 1101(a)(43)(J) (directing that an offense described in 18 U.S.C. § 1084 only qualifies under this subsection "if it is a second or subsequent offense"); *id.* (setting imprisonment at one year or more to qualify under this subsection).

Congress also could have defined the offenses embodied in the federal statutes by their generic names rather than by specific statutes, as it also did elsewhere in § 101(a)(43). For instance, in the case of § 844(i), it could have simply left the category open to all explosive materials offenses or at least to all acts of arson. But it did not make such a generic reference: It referred to arson that included a sufficient relationship to interstate commerce. We must assume that Congress was aware of the limits imposed by the Commerce Clause on the reach of the statutes it passes and that it restricted the breadth of § 101(a)(43)(E) with the substantive constraints of the included jurisdictional elements in mind. *See United States v. Am. Bldg. Maint. Indus.*, 422 U.S. 271, 279-80 (1975) (comparing Congress's use of "in commerce" versus "affected commerce" to show that Congress is aware of its Commerce Clause power and the extent to which it asserts that power in drafting statutes). In some circumstances, the jurisdictional element may be the most meaningful and differentiating element, since it is what distinguishes generic arson from the arson described by §

844(i), thereby evincing Congress's intent in selecting § 844(i) rather than generic arson.[5]

## C. The Jurisdictional Element of 18 U.S.C. § 844(i)

Unlike our sister circuits' precedent in the § 922(g)(1) context, the Supreme Court has explained that the jurisdictional element of § 844(i) substantially narrows the range of arson criminalized therein. In *Jones v. United States*, 529 U.S. 848 (2000), the Supreme Court paid particular attention to the significance of the jurisdictional element of the statute. In *Jones*, the petitioner had been convicted under § 844(i) for tossing a Molotov cocktail into his cousin's house. The Supreme Court overturned his conviction, holding that the house did not satisfy the jurisdictional element of § 844(i) because it did not have a sufficient nexus with interstate commerce. The Court reasoned that Congress intended for the "used in interstate commerce" language of § 844(i) to require that the object of an arson be used actively, rather than passively, in commerce. *Id.* at 855-56. The fact that the cousin's house was fed by natural gas used in interstate commerce, was mortgaged with a loan used in

---

[5] The Dissent agrees with the Seventh Circuit's reasoning in *Negrette-Rodriguez* that Congress did not need to define arson generically to achieve a scope broader than the mere elements of § 844(i). This is problematic for two reasons. First, this strips the meaning from Congress's deliberate choice to define some aggravated felonies by generic offenses and others by federal criminal statutes. Second, this suggests that defining an aggravated felony by a *specific* federal statute is equivalent to defining it with a *generic* criminal offense — such logic contradicts itself.

interstate commerce, and was used to obtain a casualty insurance policy used in interstate commerce, were not sufficiently active uses in commerce. *Id.* A house used as a rental property, on the other hand, would be used actively in interstate commerce. *Id.* at 853 (citing *Russell v. United States*, 471 U.S. 858, 859, 862 (1985)).

The Court surmised that reading the jurisdictional element too loosely would render the statute far too broad since every building has some indirect connection to interstate commerce. 529 U.S. at 859 ("We conclude that § 844(i) is not soundly read to make virtually every arson in the country a federal offense."); *see also Russell*, 471 U.S. at 862 ("In sum, the legislative history [of § 844(i)] suggests that Congress at least intended to protect all business property, as well as some additional property that might not fit that description, but perhaps not every private home."). The Court did not winnow the reach of § 844(i) because a looser interpretation would exceed Congress's Commerce Clause power but, rather, because such an expansive interpretation of § 844(i) would render Congress's deliberate wording of "used in" superfluous and meaningless and would not observe the rule of lenity, where criminal statutes are to be read in the most lenient fashion available.[6] 529 U.S. at 857-58.

The BIA addressed *Jones* in its decision, largely declaring it inapplicable to the collateral immigration consequences context. *Bautista*, 25 I. & N. Dec. at 620-21.

---

[6] However, the Court recognized that its limited reading of § 844(i) would also avoid the constitutional question addressed in *United States v. Lopez* regarding the regulation of local criminal activity. *See Jones*, 529 U.S. at 851.

The BIA concluded that, in respect to § 101(a)(43)(E), *Jones* established that the jurisdictional element is "an essential Federal jurisdictional element" and nothing more because the Supreme Court did not extend its holding to collateral immigration consequences. *Id.* Here, the BIA's treatment of *Jones* is in error. Like *Jones*, *Taylor* was not an immigration case and did not explicitly extend its holding to collateral immigration consequences, yet its categorical approach is indisputably binding precedent in immigration cases such as this. 495 U.S. at 577-78 (introducing the issue in the case as the applicability of a sentencing enhancement for burglary).

The Dissent swiftly dispatches *Jones* by discounting it as a federalism ruling to prevent Congress from encroaching on the power of the states. The Dissent's position implies that federal criminal statutes should assume different meanings depending on the use and context of a statute. The Dissent's reasoning suggests that, in prosecuting a defendant under § 844(i), § 844(i) retains a jurisdictional element but, in removing an alien under the INA, the jurisdictional element of § 844(i) disappears. This seems contrary to the reason why Congress chose to define some categories of aggravated felonies by reference to federal criminal statutes: It is because federal criminal statutes have fixed meanings, that they make stable and reliable reference points for establishing categories of offenses.

Under *Jones*, it matters to the categorical approach under § 101(a)(43)(E)(i) whether the object of the arson has a sufficient nexus with interstate commerce — it does more than provide a jurisdictional hook for Congress. Accordingly, a state arson conviction will only be "described in", and punishable under § 844(i), if the state statute includes an

23

element requiring that the object of the arson be actively used in interstate commerce. Thus, Bautista's conviction is not an aggravated felony under the formal categorical approach because the New York statute lacks the jurisdictional element that *Jones* held to be a substantive and substantial element of § 844(i).

We cannot undermine the categorical approach and Congress's deliberate choice to include § 844(i), rather than generic arson, in § 101(a)(43)(E)(i). Further, were we to ignore the jurisdictional element in our categorical approach to § 844(i), as the BIA has here, we would be characterizing a state conviction for arson of the intrastate house in *Jones* as an aggravated felony "described in" § 844(i), when the Supreme Court clearly excised the arson of such intrastate objects from the scope of that federal statute. We are loath to suggest that Congress would use a federal statute, like § 844(i), to "describe" offenses outside the parameter of that very federal statute without an unequivocal indication that it was doing something so counterintuitive. *See Lopez v. Gonzales*, 549 U.S. at 58, 59 ("[I]t would have been passing strange for Congress to intend [that federal consequences of state crimes would vary by state] when a state criminal classification is at odds with a federal provision that the INA expressly provides as a specific example of an 'aggravated felony' [like § 924(c)]."); *id.* at 54-55 ("Congress can define an aggravated felony . . . in an unexpected way. But Congress would need to tell us so, and there are good reasons to think it was doing no such thing here.").[7]

---

[7] It is also worth mentioning that the penultimate sentence of § 101(a)(43) uses the same "described in" phrasing. 8 U.S.C. § 1101(a)(43) ("The term applies to an offense *described in*

24

On these grounds, we decline to apply our sister circuits' reasoning from the § 922(g)(1) context to the § 844(i) context. Specifically, we find that, even if we accept our sister circuits' application of the categorical approach to § 922(g)(1), that approach cannot survive the Supreme Court's understanding of the jurisdictional element of § 844(i) in *Jones*. In light of *Jones* and the language of § 101(a)(43)(E)(i), we can find no principled basis for reading the jurisdictional element out of § 844(i). The bottom line is that § 844(i) does not describe generic arson or common law arson, but arson that involves interstate commerce.

## D. The Jurisdictional Aspects of the Offenses Enumerated in § 101(a)(43) Must Be Considered Separately

We recognize that the salience of a jurisdictional element and its requisite interstate commerce nexus may vary depending on the substantive nature of the offense at hand. As the Supreme Court made clear in *Jones*, not all arson has a nexus with interstate commerce sufficient for it to be categorized as a federal offense. Under § 844(i), the jurisdictional element has a meaningful narrowing effect on the range of arson criminalized, excluding categories of arson that have no more than an insubstantial effect on interstate commerce — such as arson involving virtually all private residences employed for personal use. Consequently, by

this paragraph whether in violation of Federal or State law . . . .") (emphasis added). Clearly, "described in", as used in the penultimate sentence, means the actual conduct enumerated in § 101(a)(43), rather than conduct not directly referenced in the subsection.

referring to § 844(i) in § 101(a)(43)(E)(i), rather than generic arson, Congress deliberately narrowed the range of arson that qualifies as an aggravated felony and we must not expand that range by ignoring the jurisdictional element in the categorical approach.

That this narrows the number of state convictions falling under the umbra of § 101(a)(43)(E)(i) is of little moment to our determination. *See Moncrieffe*, 133 S. Ct. at 1692-93 (concluding that the dearth of state convictions captured under its interpretation of § 101(a)(43)(B) did not undermine its interpretation). *But see Nijhawan v. Holder*, 557 U.S. 29, 39-40 (2013) (finding its interpretation of § 101(a)(43)(M)(i) controlled by the absence of a monetary threshold requirement in federal and state fraud statutes).[8]

We also do not find it persuasive that the Eighth Circuit has extended our sister circuits' § 922(g)(1) rationale to the § 1962 racketeering context under § 101(a)(43)(J). *See Spacek*, 688 F.3d at 538-39. With respect to the Eighth Circuit's conclusion that all "jurisdictional" provisions may be disregarded when applying § 101(a)(43)(J), *Jones* makes

---

[8] Significantly, our holding that a conviction under N.Y. Penal Law § 150.10 does not constitute an aggravated felony does not mean that Bautista will escape deportation. "It means only avoiding *mandatory* removal." *Moncrieffe*, 133 S. Ct. at 1692 (emphasis added). Bautista has conceded his removability for committing a crime involving moral turpitude, and now will be eligible to apply for cancellation of removal under § 240A of the INA, which is a discretionary determination undertaken by the IJ.

26

clear that all elements of the offense described in § 844(i) are relevant to the scope of covered state arson offenses under § 101(a)(43)(E)(i), including those elements that may be characterized as "jurisdictional".

## E. Other Considerations Compel This Result

There are several other reasons why our approach to the § 101(a)(43) inquiry is the appropriate one in the context of arson convictions. First, our position is one that remains most faithful to the overarching policy of the INA — uniformity. *See Taylor*, 495 U.S. at 590-92, 599-600 (determining that Congress used "uniform, categorical definitions to capture all offenses of a certain level of seriousness . . . regardless of technical definitions and labels under state law"); *Gerbier v. Holmes*, 280 F.3d 297, 312 (3d Cir. 2002) (commenting that national uniformity would be undermined if "aliens convicted of drug offenses in different states that punish similar offenses differently [were] treated differently with respect to deportation and cancellation"). A collateral immigration consequence based upon a state criminal conviction should not depend on whether and how individual states choose to criminalize and codify offensive conduct — it should depend on whether the state conviction satisfies the elements of the pertinent federal criminal statute listed in § 101(a)(43). *See Taylor*, 495 U.S. at 590 ("It seems to us to be implausible that Congress intended a [categorical definition of a crime] to depend on the definition adopted by the State of conviction."); *Lopez v. Gonzales*, 549 U.S. at 58-59 (remarking about the "untoward consequences" that would ensue if the law of alien removal was "dependent on varying state criminal classifications . . . when Congress has

apparently pegged the immigration statutes to the classifications Congress itself chose").

Next, our interpretation of § 101(a)(43) comports best with the other federal criminal statutes set out in §101(a)(43). A survey of these statutes reveals that the jurisdictional elements used in federal criminal statutes are not generic or uniform — the jurisdictional element, as an element of the crime, may reflect the conduct targeted by the statute or reflect the intent of Congress in criminalizing such conduct. To provide one example, when § 101(a)(43)(E)(i) refers to an "offense described in" 18 U.S.C. § 844(g), it is targeting explosives possessed in airports regulated by the Federal Aviation Administration ("FAA") and property controlled by the federal government. Mention of the FAA is not included simply to provide a jurisdictional hook such that the possession of explosives in any airport should be considered an aggravated felony. Or, to provide another example, when § 101(a)(43)(H) refers to an offense described in 18 U.S.C. § 876, it is specifically targeting threatening communications sent through the U.S. Postal Service — that is not merely a jurisdictional hook in order to target mail threats generally. Or, consider § 101(a)(43)(M)(ii), which refers to an offense described in 26 U.S.C. § 7201 — the reference to the federal tax code is not merely a jurisdictional hook to target tax evasion generally, be it against the federal government or state governments.

Congress hand-picked which specific federal criminal statutes it would include in § 101(a)(43) and we must give due weight to such deliberate choices. *See Lopez v. Gonzales*, 549 U.S. at 58 ("We cannot imagine that Congress took the trouble to incorporate its own statutory scheme . . . if it meant [for] courts to ignore it whenever a State chose to punish a

28

given act more heavily."); *Moncrieffe*, 133 S. Ct. at 1689 (calling it an "anomaly" to have courts "ignore the very factors" distinguishing the statutes that Congress has established to designate aggravated felonies).

It would seem anomalous to disregard the explicit requirement that there be a nexus with the FAA, the U.S. Postal Service, or federal taxes in those statutes because applying that "jurisdictional" element would only capture a negligible number of state convictions for possessing explosives at airports, sending threatening communications through the mail, and evading state taxes. A threatening communication sent intrastate via Fed Ex should not be considered an aggravated felony merely because it would provide Congress with legislative jurisdiction if it had been sent via the U.S. Postal Service.

Accordingly, we hold that the formal categorical approach requires that convictions under state criminal statutes include a jurisdictional element to qualify as aggravated felonies corresponding to § 844(i) under § 101(a)(43)(E)(i).

## IV. CONCLUSION

For the reasons set forth above, we will grant Bautista's petition and vacate the BIA's decision. We find that, since the statute of Bautista's conviction does not contain the jurisdictional element of 18 U.S.C. § 844(i), his conviction is not an aggravated felony under § 101(a)(43)(E)(i) because the state statute of his conviction does not require a nexus with interstate commerce. We

remand this case to the BIA for further consideration in accord with this opinion.

AMBRO, Circuit Judge, dissenting

Mr. Bautista is ineligible for cancellation of removal under the INA if he has committed an aggravated felony under INA § 101(a)(43)(E)(i). The BIA held that his attempted arson conviction under New York state law is an aggravated felony. In vacating and remanding this ruling, my colleagues determine that (1) § 101(a)(43)(E)(i) is unambiguous; (2) the BIA's construction of the statute was not consistent with Congress' expressed intent; and (3) Bautista's state arson conviction cannot qualify as an aggravated felony because it does not contain as an element the jurisdictional requirement of the federal arson provision in 18 U.S.C. § 844(i). Because I believe § 101(a)(43)(E)(i) to be ambiguous and the BIA's construction of it reasonable, I respectfully dissent.

## I.      Background

Subsection 101(a)(43) of the INA defines an aggravated felony, "whether in violation of Federal or State law . . . [or] the law of a foreign country," in one of three ways: 1) generically (for example, "murder" or "rape"); 2) as an offense "defined in" a specific federal statute; or 3) as an offense "described in" a specific federal statute. 8 U.S.C. § 1101(a)(43). Subsection 101(a)(43)(E)(i), the provision involved here, is of the third kind: it states that an aggravated felony includes any offense "described in" 18 U.S.C. § 844(i). The latter criminalizes the (i) damage or destruction, (ii) by means of fire or an explosive, (iii) of any building, vehicle, or other real or personal property (iv) used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce. The last item is what we call a jurisdictional hook – the authority to make an act a federal crime exists when interstate or foreign commerce is involved.

Bautista was convicted of attempted arson in the third degree, in violation of New York Penal Law §§ 150.10 and 110. Section 150.10 provides that "[a] person is guilty of arson in the third degree when he intentionally damages a building or motor vehicle by starting a fire or causing an explosion." For purposes of the INA, attempting to commit arson has the same consequences as committing it. 8 U.S.C. § 1101(a)(43)(U). Bautista concedes that – apart from the jurisdictional element of § 844(i), which requires that the target of the arson have a nexus with interstate commerce – N.Y. Penal Law § 150.10 and 18 U.S.C. § 844(i) are essentially identical. He argues, however (and the majority agrees), that the jurisdictional element of the federal statute is a substantive element of the crime, and thus his conviction under N.Y. Penal Law § 150.10 is not "an offense described in" 18 U.S.C. § 844(i).

## II.    *Chevron* **Deference**

"[T]he BIA should be accorded *Chevron* deference for its interpretations of the immigration laws." *Tineo v. Ashcroft*, 350 F.3d 382, 396 (3d Cir. 2003); *see also Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). This involves a two-step inquiry. At step one, we determine "whether Congress has directly spoken to the precise question at issue and unambiguously expressed [its] intent." *Yusupov v. Attorney Gen. of U.S.*, 518 F.3d 185, 197 (3d Cir. 2008) (alteration in original) (quoting *Chevron*, 467 U.S. at 842-43). If the answer is yes, the inquiry ends. *Id.* If instead "the statute is silent or ambiguous with respect to the specific issue, [we proceed] to step two [and inquire] whether the agency's answer is based on a permissible construction of the statute." *Id.* at 198 (internal quotation marks and citation omitted). If the statute is ambiguous and the BIA's construction of the statute is reasonable, we are required "to accept the [BIA's] construction of the statute, even if [that]

2

reading differs from what [we believe] is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 980 (2005) (citation omitted).

My colleagues at step one conclude quickly that Congress's intent with respect to the classification of state convictions as aggravated felonies under § 101(a)(43)(E)(i) is clear and that the BIA's construction of the statute is contrary to that intent. The bulk of their opinion, therefore, explains what they believe to be Congress' expressed intent. Unlike my colleagues, I believe that, under *Chevron* step one, § 101(a)(43)(E)(i) is ambiguous as to when a state arson conviction qualifies as an aggravated felony. Proceeding to the second step, I conclude that the BIA's construction of § 101(a)(43)(E)(i) is reasonable. Hence we must accept its construction regardless whether we believe a different or better construction exists. The consequence is that, because the BIA concluded reasonably that Bautista's state arson conviction qualifies as an aggravated felony under § 101(a)(43)(E)(i), he is ineligible for cancellation of removal under the INA.

A.     The Statute is Ambiguous

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Marshak v. Treadwell, 240 F.3d 184, 192 (3d Cir. 2001) (*quoting *Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)).* When interpreting a statute, "we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Prestol Espinal v. Attorney Gen. of U.S.*, 653 F.3d 213, 217 (3d Cir. 2011) (quoting *United States v. Heirs of Boisdore*, 49 U.S. 113, 122 (1850)). While I agree with the majority that disagreements in the courts do not

3

automatically mean a statute is ambiguous, those disagreements are evidence that reasonable minds may differ in interpreting statutory language. Here I believe that, at best, the structure and language of § 101(a)(43)(E) do not unambiguously express Congressional intent.

The position of my colleagues is, as noted, that the language of § 101(a)(43)(E)(i) leaves no doubt and that the provision is correctly interpreted in only the following way: if a state arson crime would not be directly punishable under 18 U.S.C. § 844(i) because it lacks the federal statute's jurisdictional element, the state offense does not qualify as an aggravated felony. Their rationale flows as follows. "Congress intended some meaning through its use of 'described in' versus 'defined in.'" Maj. Op. at 9. Their take is that the latter is broad: "the state conviction need not be punishable under [the relevant] federal statute, but need only include the listed criminal conduct, as it is 'defined' by the federal statute." *Id.* "[D]escribed in," they assert, is narrower and requires that all elements of the federal criminal statute (here § 844(i)) be included within the elements of the state criminal provision (N.Y. Penal Law § 150.10).

Though "described in" and "defined in" are not synonymous, I disagree with my colleagues' against-the-grain suggestion that "defined in" should be read more broadly than "described in." As our sister Circuit Courts of Appeals have concluded, "described in" is the broader standard, and § 101(a)(43)(E)'s use of "described in" favors finding that Bautista's state arson conviction qualifies as an aggravated felony. *See United States v. Castillo-Rivera*, 244 F.3d 1020, 1023 (9th Cir. 2001) ("Congress as a practical matter . . . had to use some looser standard such as 'described in[,]' rather than the more precise standard of 'defined in,' if it wanted more than a negligible number of state offenses to count as

4

aggravated felonies.") (internal quotation marks and citation omitted).

I thus part with my colleagues' view that Congress used the phrase "described in" to classify a state conviction as an aggravated felony only when the state offense contains the same elements as, and is directly punishable under, a federal statute. To me, the phrase "described in" refers broadly to the *type* of offense. An offense "described" in § 844(i) includes any offense that involves the substantive elements of arson – the destruction, by means of fire or an explosive, of a building, vehicle, or other real or personal property. Under this reading, the New York state crime of attempted arson would fall under the type of offense Congress intended to make an aggravated felony even if the New York state statute lacks the jurisdictional element of the analogous federal statute.

The majority asserts that one indication that the jurisdictional hook is a substantive element of the federal arson statute for purposes of §101(a)(43)(E) is that "Congress [, in formulating the provision,] . . . could have defined the offenses embodied in the federal statutes by their generic names rather than by specific statutes." Maj. Op. at 19. That Congress did not fails to persuade me. Instead, I agree with the Seventh Circuit Court's reasoning in *Negrete-Rodriguez v. Mukasey*, 518 F.3d 497 (7th Cir. 2008). Responding to the same argument in the context of 18 U.S.C. § 922(g) (felon in possession of a firearm), the Court there noted:

> [I]t does not follow that, because Congress has defined *some* crimes in general terms, it had to define *all* crimes in general terms in order for the offense's state law counterpart to be included within the definition of an "aggravated felony." Indeed, many firearms offenses are not

5

susceptible to being easily described in general terms, while others are dependent on other provisions in a statutory scheme.

*Id.* at 503 (emphases in original) (citation omitted). I think this argument applies equally in the § 844(i) context.

The majority next relies on *Jones v. United States*, 529 U.S. 848 (2000), to conclude that the federal jurisdictional hook in § 844(i) is a substantive element of the offense. *Jones* held that the arson of an "owner-occupied residence not used for any commercial purpose [did] not qualify as property 'used in' commerce or commerce-affecting activity." *Id.* at 850-51. The Court focused on interpreting the jurisdictional component of § 844(i) in order to curb Congress' power *vis a vis* the states and maintain the constitutionality of the federal arson statute. *See id.* at 858 ("To read § 844(i) as encompassing the arson of an owner-occupied private home would [effectively change the federal-state balance in the prosecution of crimes], for arson is a paradigmatic common-law state crime."). *Jones* ruled that the "interstate commerce" language of § 844(i) was substantive for *the purpose of federal jurisdiction*, and interpreted that language narrowly in order to prevent "[every] building in the land [from falling within] the federal statute's domain." *Id.* at 849. That ruling, I submit, does not support the majority's position that the jurisdictional component of § 844(i) is a substantive element of the underlying crime.

My colleagues also rely on *Jones* as evidence that Congress intended the jurisdictional element of § 844(i) to narrow the range of arson crimes that qualify as aggravated felonies under § 101(a)(43)(E). Given that *Jones* postdates § 101(a)(43)(E) by several years, I find this line of reasoning unpersuasive. Instead, I am persuaded by the BIA's

6

reasoning that "the holding in *Jones* related to the scope of the Federal criminal statute, not the collateral consequences in an immigration case." *Matter of Robert Bautista*, 25 I. & N. Dec. 616, at *5 (Oct. 13, 2011).

Were they to adopt the BIA's reasoning and ignore the jurisdictional element of § 844(i), my colleagues contend that they "would condone the erroneous outcome" where a state conviction for arson could qualify as an aggravated felony for purposes of the removal statute despite the Supreme Court's ruling in *Jones* that such a conviction would not hold under § 844(i). Specifically, they write that "[w]e are loath to suggest that Congress would use a federal statute, like § 844(i), to 'describe' offenses outside the parameter of that very federal statute without an unequivocal indication that it was doing something so counterintuitive." Maj. Op. at 23. My response is that the penultimate sentence of § 101(a)(43), which notes that "the term [aggravated felony] applies to an offense described in this paragraph whether in violation of Federal or State law," is precisely such an indication. 8 U.S.C. § 1101(a)(43). To qualify as an "aggravated felony" for purposes of the INA, an arson offense need not be directly punishable under the federal statute. Instead, as our sister Circuit Courts of Appeals have held, the quoted sentence can reasonably be read to suggest that Congress intended state crimes that are not punishable under any particular federal statute still to have collateral immigration consequences under the INA. *See, e.g.*, *United States v. Castillo-Rivera*, 244 F.3d 1020, 1023-24 (9th Cir. 2001).

The majority acknowledges that three other Circuit Courts of Appeal – the Fifth, Seventh and Ninth – have interpreted a parallel provision of the INA, § 101(a)(43)(E)(ii), in the context of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm), and have held that the "interstate commerce" element of the federal statute is simply

7

a jurisdictional requirement distinct from the substantive nature of the offense. *See Nieto Hernandez v. Holder*, 592 F.3d 681 (5th Cir. 2009); *Negrete-Rodriguez v. Mukasey*, 518 F.3d 497 (7th Cir. 2008); *United States v. Castillo-Rivera*, 244 F.3d 1020 (9th Cir. 2001). Similarly, the Eighth Circuit Court analyzed § 101(a)(43)(J) as it applies to 18 U.S.C. § 1962 (the RICO statute), and held that a state racketeering statute was not required to have the interstate jurisdictional element contained in § 1962 in order to be "described" by the federal statute for purposes of § 101(a)(43). *See Spacek v. Holder*, 688 F.3d 536, 538-39 (8th Cir. 2010). Applying the reasoning of these other Circuit Courts to our case, it seems logical that the jurisdictional element of § 844(i) need not be satisfied in order for a state arson conviction to be an aggravated felony under § 1101(a)(43).

My colleagues diverge from our sister Circuit Courts by contending that because not all arson has a nexus with interstate commerce sufficient to qualify as a federal offense, the jurisdictional element of § 844(i) "has a meaningful narrowing effect on the range of arson criminalized," and so must be considered when determining whether an offense qualifies as an aggravated felony under § 101(a)(43)(E). Maj. Op. at 25. They also decline to find the Eighth Circuit's reasoning in *Spacek* persuasive, arguing instead that under *Jones* all statutory elements – including those that are "jurisdictional" – are relevant to the scope of state arson offenses.

Under this reading of the statute, however, it would seem that Congress intended state arson convictions rarely, if ever, to qualify as aggravated felonies. My colleagues' position suggests that while murder, rape, theft and firearms offenses qualify as aggravated felonies regardless of jurisdiction, arson is somehow unique in that it triggers collateral immigration consequences only when it has a nexus

8

to interstate commerce. I do not believe that this result is supported by the language of the statute. *See Castillo-Rivera*, 244 F.3d at 1023-24 ("Interpreting the jurisdictional element of § 922(g) to be necessary in order for a state firearms conviction to constitute an aggravated felony under § 1101(a)(43)(E)(ii) would reduce the number of state firearms offenses that qualify to no more than a negligible number . . . [and] would undermine the language of the aggravated felony statute and the evident intent of Congress"). Thus, I see no principled way to distinguish the jurisdictional elements of § 922(g) and § 844(i) in the context of interpreting § 101(a)(43)(E)(i) and § 101(a)(43)(E)(ii).

Another concern I have is that my colleagues' reading is in tension with the final phrase of § 101(a)(43), which provides that an offense in violation of foreign law may also be an aggravated felony under the INA. Congress surely did not envision that foreign laws would include references to interstate commerce.

I am also concerned that the majority opinion implicitly creates a Circuit split. In their analysis of § 844(i), my colleagues carefully skirt the issue of whether the jurisdictional element of § 922(g) is necessary for a state firearms conviction to qualify as an aggravated felony, a question on which our Court has not ruled. If and when we are asked to decide that question, however, we are likely to find ourselves in the untenable position of either abandoning the logic of the majority's opinion or ruling counter to our sister Circuit Courts.

What I note is not intended to establish that my opposing construction of the statute is correct (though I believe it is). The takeaway is that reasonable minds so differently interpreting the same language indicates starkly that the statute is at best ambiguous. As such, I continue to

9

the second step of the *Chevron* inquiry, and consider whether the BIA's interpretation of the statute is reasonable.

B.    The BIA's Construction of § 101(a)(43)(E)(i) was Reasonable

If the BIA has spoken to the meaning of an ambiguous statute, the Court's inquiry is "limited to determining whether the BIA's statutory interpretation is based on a reasonable, permissible construction of that statute." *Tineo*, 350 F.3d at 396. In our case, the BIA has spoken on the meaning of § 101(a)(43)(E)(i) and has expressly held that, because the jurisdictional element of 18 U.S.C. § 844(i) does not define the substantive offense, the New York state law offense of attempted arson is a crime "described in" § 844(i) and thus qualifies as an aggravated felony for purposes of the INA. In its statutory analysis of § 101(a)(43)(E)(i), the BIA addressed several of the points that I have raised above, notably the difficulty of distinguishing the jurisdictional elements of § 844(i) and § 922(g)(1) and the limited application of *Jones*.

\* \* \* \* \*

Given the BIA's thorough analysis, as well as the persuasive authority from our Circuit colleagues interpreting a related pairing of immigration and federal criminal provisions, I conclude that the BIA's interpretation of § 101(a)(43)(E)(i) as it relates to § 844(i) is reasonable under *Chevron*. I would affirm the BIA's ruling that Bautista's arson conviction under New York state law qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43). The regrettable result is that Bautista is ineligible for cancellation of removal. I thus respectfully dissent.

10