NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2986

_____

HOMNATH SUBEDI,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(A209-429-561)
Immigration Judge: Honorable Walter A. Durling

_____

Submitted Under Third Circuit LAR 34.1(a)
April 26, 2018

Before: JORDAN, BIBAS, and SCIRICA, *Circuit Judges*

(Opinion Filed: May 2, 2018)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Homnath Subedi petitions for review of an order of the Board of Immigration Appeals ("BIA") denying his request for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We will deny the petition.

## I. Background[1]

Subedi is a native and citizen of Nepal who entered the United States illegally. He fled Nepal because of his fear that a political group known as the Maoists might harm him. Around 2001 or 2002, when he was twelve years old and living in his hometown of Myagdi, Maoists killed his mother. She had been a member of a rival political group called the Nepali Congress Party ("NCP"). He remembers that Maoists asked his mother for help and, after she refused, they beat her so badly that she died the next day. For more than a decade after that incident, however, he did not experience any problems with Maoists.

Years later, in 2013 and still in Myagdi, Subedi attended a meeting of the NCP. At some point during his four- to five-hour journey home through the jungle afterwards, several Maoists stopped him and beat him with bamboo sticks. The attack left him with bruises and a broken tooth. He apparently fainted during the encounter, and, when he awoke, he slowly continued to walk home and recovered there rather than going to the hospital to seek medical treatment.

---

[1] The facts in this case are drawn from the administrative record developed before the agency.

2

Subedi next encountered Maoists when "Constituent Assembly elections" were held in November 2013. (J.A. at 222.) According to his account, on his way to the school where the polling station was located, Maoists detained him, locked him in a school bathroom, and prevented him from voting. Subedi testified that he was locked up alongside one of his friends for six hours, that his hands and legs were tied, and that the Maoists said "we know what happened to your mother[.]" (J.A. at 63.) After the incident, they instructed Subedi to join their political party within one month's time.

Following that second incident, Subedi moved to Kathmandu, the capital of Nepal. He lived in a hotel where he found work for four to five months. He got married and continued working at the hotel for several more months, but he returned home to Myagdi for a short time to take school exams. During the brief period he was home, Subedi received a threatening phone call from Maoists demanding that he join their political party. He returned to Kathmandu where he remained for almost a year before going home to Myagdi in February 2016. He only went back home that last time to get a reissued national identification card after his citizenship documents were lost in an earthquake. Subedi claims that, while back in Myagdi, he was "slightly threatened" by an unknown individual who encouraged him to stay in his home village and join the Maoist party. (J.A. at 171.)

Subedi testified that he then came to the United States because of his fear that there was nowhere safe to live in Nepal, that Maoists may attempt to kill him, and that the government in Nepal could not protect him. He believes that he cannot live safely in

3

Kathmandu because the Maoists have "a network and they are looking for [him.]" (J.A. at 68-69.)

Removal proceedings were initiated against Subedi, and he concedes that he is removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1182(a)(7)(A)(i)(I). He applied for asylum and statutory withholding of removal based on persecution on account of his political opinion. He also applied for relief under the CAT.

The immigration judge ("IJ") assigned to the case issued an oral decision denying Subedi all relief. The IJ refused to "make an adverse credibility finding per se," but said "that does not mean [he] necessarily accept[ed] [Subedi's] recounting of the facts as he testified[.]" (J.A. at 136.) Instead, the IJ said there was no evidence amounting to past persecution. He said that the beating by Maoists after a political meeting "was a random act of violence[,]" and Subedi suffered "no real harm because … he went home and was just treated at home." (J.A. at 136.) The IJ suggested that the account of Subedi being locked away in a bathroom for several hours was incredible and was otherwise not something that rose to the level of past persecution.

The IJ also determined that there was insufficient evidence to demonstrate a well-founded fear of future persecution. Although the evidence demonstrated that Maoists were causing some violence and political problems in 2013, there was proof of changed country conditions. He noted that the Nepali government is now led by a Maoist leader with the support of the NCP through "some type of conciliation" or "agreement" between the rival political parties. (J.A. at 136-37.) Moreover, he explained, there was no

4

evidence that Subedi would be harmed in Kathmandu, given that he had previously lived there for an extended period of time without incident. Thus, even if there were evidence sufficient to establish past persecution, the IJ concluded that the government had met its burden of overcoming the presumption of a well-founded fear of future persecution.

Finally, the IJ concluded that there was no evidence in the record suggesting Subedi would likely be tortured by Maoists if removed to Nepal because there is a conciliation between the rival political parties and there was no evidence that Subedi could not safely relocate to his hometown or to Kathmandu. The IJ ultimately ordered Subedi removed from the United States in accordance with § 241(b)(1)(A) of the INA.

Subedi appealed to the BIA, which agreed with the IJ and dismissed the appeal. The BIA began by noting that the IJ "did not make an explicit credibility finding," and thus it assumed Subedi's testimony to be credible. (J.A. at 7 n.1.) Like the IJ, the BIA determined that Subedi had not established past persecution because his two major interactions with Maoists – the bamboo stick beating and the school restroom detention – did "not in the aggregate rise to the level of persecution." (J.A. at 7.) It also noted that the grevious harm suffered by Subedi's mother was not enough, by itself, to establish past persecution of Subedi. Because past persecution had not been shown, the BIA concluded that Subedi was not entitled to a presumption of a well-founded fear of persecution and that, independent of the presumption, he failed to establish eligibility for asylum or statutory withholding of removal. The BIA said that Subedi had not proven an objectively reasonable fear of persecution in Nepal because he lived in Kathmandu without experiencing harm or threats of harm, and there was evidence that the Maoists

5

and NCP had been working together in government. Finally, the BIA agreed with the IJ that Subedi had not established that it is more likely than not that he would be subjected to torture if returned to Nepal.

Subedi timely filed the present petition for review.

## II. Discussion[2]

Subedi argues that we must vacate the BIA's decision to deny his asylum, withholding of removal, and CAT claims. The record, however, dictates that we deny his petition for review.

According to Subedi, he is entitled to asylum because substantial evidence demonstrates that he suffered past persecution and that he has a well-founded fear of future persecution. He contends that "the BIA failed to assess the *cumulative* effect of [his] experience" based on the record as a whole. (Opening Br. at 12.) Applying the mandated deferential standard of review, we conclude that the IJ's and BIA's contrary finding is supported by substantial evidence. It is true that, "in determining whether actual or threatened mistreatment amounts to persecution, '[t]he cumulative effect of the

---

[2] The BIA had jurisdiction under 8 U.S.C. § 1103 and 8 C.F.R. § 1003.1(b)(3). We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). "We review the BIA's legal determinations de novo, subject to the principles of deference articulated in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984)." *Catwell v. Att'y Gen.*, 623 F.3d 199, 205 (3d Cir. 2010). We review factual findings under the substantial-evidence standard. *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006). Under that standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B). "Because the BIA did not summarily affirm the IJ's order but instead issued a separate opinion, we review the BIA's disposition and look to the IJ's ruling only insofar as the BIA deferred to it." *Roye v. Att'y Gen.*, 693 F.3d 333, 339 (3d Cir. 2012).

applicant's experience must be taken into account' because '[t]aking isolated incidents out of context may be misleading.'" *Cheng v. Att'y Gen.*, 623 F.3d 175, 192 (3d Cir. 2010) (alterations in original) (quoting *Manzur v. Dep't of Homeland Sec.*, 494 F.3d 281, 290 (2d Cir. 2007)). But here, the BIA expressly noted that its decision that Subedi failed to establish past persecution was based on the evidence "in the aggregate[.]" (J.A. at 7.)

Moreover, taking the record as a whole, there is substantial evidence to support the BIA's conclusion. We have said that "[p]ersecution 'is an extreme concept that does not include every sort of treatment our society regards as offensive.'" *Jarbough v. Att'y Gen.*, 483 F.3d 184, 191 (3d Cir. 2007) (citation omitted). Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). But "[a]busive treatment and harassment, while always deplorable, may not rise to the level of persecution." *Jarbough*, 483 F.3d at 191. The isolated incidents that occurred here, including the bamboo stick incident and school restroom detention, did not rise to the necessary level of severe threat to life or freedom. *See Voci v. Gonzales*, 409 F.3d 607, 615 (3d Cir. 2005) ("[I]solated incidents that do not result in serious injury do not rise to the level of persecution."). And while we agree with Subedi that he is not relying solely on the death of his mother at the hands of Maoists to establish past persecution, even considering that terrible event in the mix of evidence as the BIA did, the same result remains. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (noting that reversal of the agency's denial of asylum is only warranted when the evidence is so compelling that no reasonable factfinder could fail to find the requisite likelihood of persecution). Her

7

death, though tragic, occurred over a decade before Subedi's other alleged encounters with the Maoists, and, in the interim, Subedi admitted that he experienced no problems with them. Thus, the record, when taken in its entirety, does not compel the conclusion that Subedi suffered past persecution. *See id.* at 481 n.1 ("To reverse [a] BIA finding[,] we must find that the evidence not only *supports* that conclusion, but *compels* it[.]").

Regardless, substantial evidence also supports the BIA's conclusion that Subedi failed to establish a well-founded fear of future persecution. A significant factor in determining whether an alien has a well-founded fear of persecution is whether he can relocate within his country of origin. 8 C.F.R. § 1208.13(b)(3)(i). As the BIA discussed, the record suggests that Subedi could, at the very least, safely reside in Kathmandu as he did for a significant period of time prior to entering the United States. Thus, we cannot say that a reasonable factfinder would be required to conclude that Subedi has a well-founded fear of persecution based on the evidence in the record.[3]

Turning to Subedi's withholding of removal claim, because he cannot meet the well-founded fear of persecution standard for asylum, it necessarily follows that he cannot meet the more stringent standard for withholding of removal. *See Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004) ("An alien who fails to establish that he or she has a well-founded fear of persecution, so as to be eligible for asylum, necessarily will fail to establish the right to withholding of removal.").

---

[3] Because we conclude that the BIA did not err when it determined that Subedi failed to prove past persecution or a well-founded fear of future persecution, we do not need to consider Subedi's argument that the BIA erred when it agreed with the IJ's conclusion that Subedi did not meet his burden to prove a nexus between the alleged persecution and a protected ground.

8

Subedi also challenges the denial of his claim for CAT relief. But he has failed to establish, for the reasons stated above, that he would likely be harmed if he returned to Nepal. Furthermore, as the BIA noted, nothing in the record demonstrates that he will be tortured with the consent or acquiescence of the Nepali government if he returns to Nepal. Thus, he has not established entitlement to relief under the CAT. 8 C.F.R. § 1208.16(c)(2).

## III. Conclusion

For the foregoing reasons, we will deny Subedi's petition for review.